**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3127-15T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

A.D. and D.H.,

    Defendants,

and

D.C.,

    Defendant-Appellant.

_____

IN THE MATTER OF N.D., DI.C., DIA.C.,
L.C. and A.C., Minors.

_____

<table>
<tr><td>

**APPROVED FOR PUBLICATION**

**June 11, 2018**

**APPELLATE DIVISION**

</td></tr>
</table>

Submitted December 18, 2017 — Decided June 11, 2018

Before Judges Messano, Accurso and Vernoia.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0365-15.

Joseph E. Krakora, Public Defender, attorney for appellant (Thomas G. Hand, Designated Counsel, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Sheena M. Rinkle, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor N.D. (Margo E.K. Hirsch, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for the minors, DI.C., DIA.C., L.C. and A.C. (Melissa R. Vance, Assistant Deputy Public Defender, on the brief).

The opinion of the court was delivered by

VERNOIA, J.A.D.

Defendant, D.C., appeals from a Family Part order finding he abused or neglected his fifteen-year-old stepdaughter, N.D. (Nancy),[1] by "comitt[ing] acts of sexual abuse against" her. Because we conclude there was sufficient credible evidence in the record supporting the court's factual findings and abuse or neglect determination, we affirm.

I.

On February 12, 2015, the Division of Child Protection and Permanency (Division) responded to a Newark Police Department referral that defendant was arrested for sexually abusing Nancy. Defendant is Nancy's stepfather, and father to DiA.C., born in 2002, Di.C., born in 2005, L.C., born in 2008, and A.C., born in 2011.

---

[1] We employ initials and pseudonyms to protect the children's privacy.

Nancy reported to Newark police officers and the Division that during the evening of February 7, 2015, defendant asked her to check on him by text message because he was going out drinking. She explained defendant left their home and she spoke with him at approximately 4:00 a.m. the following morning when he called her and asked if she was awake. Defendant then asked Nancy to come downstairs so they could leave to get food. Nancy agreed, got in defendant's vehicle when he arrived home, and defendant then drove to a dark street. According to Nancy, defendant parked the vehicle, kissed her on the lips and neck, and forcibly inserted his finger into her vagina. Defendant stopped when Nancy's mother, A.D., called him on the phone asking where they were. Defendant then took Nancy to a fast food restaurant, where he bought food for them.

Nancy further reported that on their way home, defendant asked if she was angry with him, and that he felt "stupid" for what he had done. Nancy said defendant had sexually abused her since she was twelve years old. A.D. told the Division caseworker that defendant confirmed he took Nancy with him to purchase food on the night of the alleged sexual assault, but denied ever sexually assaulting Nancy.

Nancy also reported prior instances of inappropriate sexual contact with defendant. She stated defendant once "tested" her

to see if she would do anything sexual with boys by touching her on her thigh area close to her vagina and buttocks. She told defendant to stop, and he told her she passed his "test." Nancy reported that when she was a young child, defendant took her clothes off while she was sleeping, but was interrupted when her mother walked into the room. Nancy also reported that defendant tried to hump her buttocks area when she was twelve while he was intoxicated.

In his February 12, 2015 statements to Newark police and the Division, defendant said he exchanged text messages with Nancy on February 7, 2015, because "she would always check on him if he [went] out to drink." Defendant admitted asking Nancy to come downstairs and get into his car, and getting food with her during the early hours of February 8, 2015. Defendant confirmed he received a phone call from A.D. while they were getting food, asking where they were. Defendant stated he told A.D. that they were getting food, and returned home with Nancy soon thereafter. Defendant denied ever touching Nancy inappropriately.

Defendant admitted to taking Nancy "through a test about boys." Defendant stated he only "talked her through everything," and "never physically touched her." Defendant also admitted he took Nancy's clothes off while she was sleeping when

4

she was a young child, but did so because she fell asleep in dirty clothes. Defendant denied humping Nancy's buttocks when she was twelve.

In an interview conducted that same day, A.D. stated that on February 8, 2015, at approximately 4:00 a.m., she noticed defendant and Nancy were not home. She then called defendant at approximately 4:30 a.m., and he said he called Nancy to come downstairs and took her to get food. A.D. indicated that Nancy and defendant then returned home.

Following her report on February 12, 2015, Nancy went to the Newark Beth Israel Medical Center for a physical examination, which revealed her hymen was not intact and she suffered from pain and tenderness in her vaginal area. The examining physician, Dr. Kereese Gayle, wrote in her notes that her "clinical impression" was that Nancy had been sexually assaulted and listed "sexual abuse of adolescent" as her diagnosis.

On February 25, 2015, the Division filed a verified complaint and order to show cause in the Law Division, seeking the care and supervision of Nancy as well as defendant's four biological children. The court granted the Division's request, and ordered that defendant "remain out of the home," and "shall

not have any contact with [the children] until further order of the court."

On March 11, 2015, Nancy was admitted to the Newark Beth Israel Medical Center's Children's Crisis Intervention Services Unit (Crisis Unit) for a psychological evaluation. The discharge summary described Dr. Lindsay Liotta's findings and showed Nancy expressed feelings of suicide, anxiety and depression. The discharge summary stated that Nancy had a "history of being assaulted by [defendant]," the most recent incident being two months prior to her admission in the Crisis Unit. The discharge summary listed post-traumatic stress disorder (PTSD) as a "diagnosis at discharge."

The court held a fact-finding hearing, but Dr. Gayle and Dr. Liotta were not called to testify. Over defense counsel's objection, the court admitted in evidence portions of Dr. Gayle's report, including her diagnosis Nancy was sexually assaulted, and Nancy's psychological records as "notes or observations of the doctors," and rejected defendant's assertion they included inadmissible complex diagnoses. After hearing testimony from Division caseworker Wilmer Mendez and reviewing Nancy's medical and psychological records, the court found the Division established by a preponderance of the evidence that defendant abused or neglected Nancy by "comitt[ing] acts of

sexual abuse," and placed his four biological children at significant risk of harm under N.J.S.A. 9:6-8.21(c).

In an oral decision, the court concluded Nancy's allegations regarding the February 8, 2015 sexual assault were corroborated, because defendant "corroborated . . . all of the facts provided in [Nancy's] account of what occurred on the subject night with the exception of the actual sexual assault." The court also found Nancy "made consistent disclosures" regarding the sexual assault, and determined it was "certainly satisfied that [Nancy's] statement was corroborated, [and] . . . credible."

The court placed particular emphasis on Dr. Gayle's clinical finding that Nancy had been sexually assaulted, and determined the Crisis Unit's discharge summary suggested that Nancy "had not had" PTSD or become anxious and suicidal "prior to these allegations of sexual abuse."

In its subsequent written decision, the court found defendant abused or neglected Nancy by sexually assaulting her on February 8, 2015, and sexually abusing her on prior occasions. The court found defendant gave Nancy a "test" where he rubbed her thigh close to her vagina. The court further found defendant humped Nancy on a previous occasion, and took her clothes off while she was sleeping. The court found

defendant's admissions "sufficiently corroborate[d] [Nancy's] statements."

The court concluded defendant's history of inappropriate sexual conduct with Nancy placed all of the children "at substantial risk of injury," as defendant "ha[d] not addressed any sexual [deviance]." In its fact-finding order, the court noted that defendant had "not admitted that this abuse occurred or taken any steps to address the sexual abuse and mitigate the risk of harm he poses to the other children which places the children at significant risk of harm." The court ordered that the children remain in the care and supervision of the Division, and ordered defendant's placement on the Child Abuse Registry.

On February 22, 2016, after a series of compliance hearings, the court entered an order terminating the abuse or neglect proceedings by the consent of all parties, ordering that defendant have no contact with Nancy, and that a prior order requiring that defendant have no contact with his biological children outside of Division supervision remain in effect.[2] This appeal followed.

Defendant presents the following arguments for our consideration:

---

[2] Defendant was no longer living with A.D., Nancy, and his biological children at the time the court entered its order terminating the litigation.

<u>LEGAL ARGUMENT</u>

THE TRIAL COURT ERRED IN FINDING THAT [DEFENDANT] COMMITTED AN ACT OF ABUSE OR NEGLECT AGAINST NANCY BECAUSE NO CREDIBLE EVIDENCE WAS PROVIDED TO CORROBORATE NANCY'S ALLEGATIONS UPON WHICH THE TRIAL COURT MADE ITS FINDINGS.

A. The Trial Court Erred in Finding That Nancy's Allegations Were Corroborated By Multiple Re-Tellings To Different People And By [Defendant's] Statements.

B. The Trial Court Erred . . . When It Relied On Inadmissible Evidence In Making Its Findings Of Fact.

## II.

Defendant argues the court erred by finding abuse or neglect based solely on Nancy's statements, which he contends were not corroborated as required by N.J.S.A. 9:6-8.46(a)(4). Defendant challenges the court's finding that Nancy's allegation of sexual abuse was corroborated by her repetition of the allegation, by his own statements to police and Division caseworkers, and by medical and psychological reports introduced into evidence at the fact-finding hearing.

We are guided by the well-established principle that "[w]e accord substantial deference and defer to the factual findings of the Family Part if they are sustained by 'adequate, substantial, and credible evidence' in the record." <u>N.J. Div. of Child Prot. & Permanency v. N.B.</u>, 452 N.J. Super. 513, 521

(App. Div. 2017) (quoting <u>N.J. Div. of Youth & Family Servs. v. R.G.</u>, 217 N.J. 527, 552 (2014)). This is "[b]ecause of the family courts' special jurisdiction and expertise in family matters." <u>N.J. Div. of Youth & Family Servs. v. M.C. III</u>, 201 N.J. 328, 343 (2010) (alteration in original) (quoting <u>Cesare v. Cesare</u>, 154 N.J. 394, 413 (1998)).

"The Division bears the burden of proof at a fact-finding hearing and must prove . . . harm . . . by a preponderance of the evidence." <u>N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. A.L.</u>, 213 N.J. 1, 22 (2013). In satisfying their burden, the Division's proofs must be "competent, material and relevant." N.J.S.A. 9:6-8.46(b). A Family Court's determination of whether the Division's proofs are admissible is "left to the . . . court's discretion, and its decision is reviewed under an abuse of discretion standard." <u>N.J. Div. of Youth & Family Servs. v. I.H.C.</u>, 415 N.J. Super. 551, 571 (App. Div. 2010).

We do not, however, accord the "same degree of deference" to Family Court findings that are based on a "misunderstanding of the applicable legal principles . . . ." <u>N.J. Div. of Youth & Family Servs. v. Z.P.R.</u>, 351 N.J. Super. 427, 434 (App. Div. 2002) (citing <u>Manalapan Realty, LP v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)). We therefore review a trial court's

legal conclusions de novo. State v. Smith, 212 N.J. 365, 387 (2012).

The trial court based its abuse or neglect finding in part on Nancy's statement that defendant sexually assaulted her on February 8, 2015. The court considered Dr. Gayle's medical report, the Crisis Unit's discharge summary and defendant's own statements as corroborative evidence of Nancy's statement describing the sexual assault.

Because the trial court's rulings "essentially involved the application of legal principles and did not turn upon contested issues of witness credibility," we review the court's corroboration determination de novo. See N.B., 452 N.J. Super. at 521 (reviewing de novo the trial court's determination that a child's statements were corroborated as required by N.J.S.A. 9:6-8.46(a)(4)).

Under N.J.S.A. 9:6-8.46(a)(4), "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect." See N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 32-33 (2011).

A child's statement need only be corroborated by "[s]ome direct or circumstantial evidence beyond the child's statement

itself." N.B., 452 N.J. Super. at 522. "The most effective types of corroborative evidence may be eyewitness testimony, a confession, an admission or medical or scientific evidence." N.J. Div. of Youth & Family Servs. v. L.A., 357 N.J. Super. at 155, 166 (App. Div. 2003). However, corroboration of child sexual abuse does not have to be "offender-specific," because "[i]t would be a rare case where evidence could be produced that would directly corroborate the specific allegation of abuse between the child and the perpetrator . . . ." Z.P.R., 351 N.J. Super. at 435. Rather, corroborative evidence "need only provide support" for the child's statements and may be circumstantial. N.B., 452 N.J. Super. at 521. The evidence must be independently admissible for a court to deem it corroborative of a child's statement. See id. at 524-26 (finding evidence was insufficient to corroborate the child's statement because it constituted inadmissible hearsay).

In N.B., we cautioned that "courts must protect against conflating a statement's reliability with corroboration," id. at 522, and determined "consistency alone does not constitute corroboration," id. at 523. We further noted that "in assessing the trustworthiness of a child's hearsay statement under N.J.R.E. 803(c)(27) . . . a court may consider . . .

'consistency of repetition,'" but that determination is "distinct from corroboration of the statement". Id. at 523 n4.

It is unclear whether the court relied on Nancy's repetition and consistency of her account of the February 8, 2015 incident to find corroboration, or simply to assess her credibility. In any event, the mere repetition and consistency of Nancy's statements are insufficient to support a finding of corroboration under N.J.S.A. 9:6-8.46(a)(4). Id. at 523. We therefore consider whether defendant's statement, Dr. Gayle's medical report and the Crisis Unit's discharge summary provide the corroboration required under N.J.S.A. 9:6-8.46(a)(4).

Defendant argues the conclusions in the medical report and the Crisis Unit's discharge summary could not have corroborated Nancy's statement because they were inadmissible. Defendant asserts Dr. Gayle's conclusion that Nancy was sexually assaulted and Dr. Liotta's conclusion that Nancy suffered from PTSD as a result of the assault constituted inadmissible statements of complex diagnoses. We agree.

Medical reports created by Division consultants for purposes of investigating allegations of abuse or neglect are generally admissible in fact-finding hearings as business records. N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 487 (App. Div. 2016); N.J.S.A. 9:6-8.46(a)(3).

However, expert conclusions or diagnoses within such reports are subject to a further admissibility determination under N.J.R.E. 808. N.J. Div. of Youth & Family Servs. v. M.G., 427 N.J. Super. 154, 173 (App. Div. 2012); accord N.B., 452 N.J. Super. at 525-26; see also N.T., 445 N.J. Super. at 487 (holding that a non-testifying expert's "diagnoses and opinions in a Division report are inadmissible hearsay, unless the trial court specifically finds they are trustworthy under the criteria in N.J.R.E. 808").

Under N.J.R.E. 808, a court may admit a non-testifying expert's diagnosis and opinion if it finds "that the circumstances involved in rendering the opinion, including the motive, duty, and interest of the declarant, whether litigation was contemplated by the declarant, the complexity of the subject matter, and the likelihood of accuracy of the opinion, tend to establish its trustworthiness." N.T., 445 N.J. Super. at 501.

"An expert medical opinion contained in a report is generally inadmissible under [this] test because of the complexity of the analysis involved in arriving at the opinion and the consequent need for the other party to have an opportunity to cross-examine the expert." Ibid. (citation omitted); see also Konop v. Rosen, 425 N.J. Super. 391, 405 (App. Div. 2012) (citations omitted) (noting that "medical

14

opinions in hospital records should not be admitted under the business records exception where the opponent will be deprived of an opportunity to cross-examine the declarant on a critical issue such as the basis for the diagnosis or cause of the condition in question").

In N.T., 445 N.J. Super. at 490, we applied the above principles in determining whether the trial court erred by admitting a non-testifying psychologist's evaluation diagnosing the child with PTSD. We determined that although the psychologist's factual observations were admissible, the opinions and diagnoses contained in the evaluation were not. Id. at 500. We concluded that psychological evaluations, like medical opinions, "generally 'entail[] the exercise of subjective judgment rather than a straightforward, simple diagnosis based upon objective criteria or one upon which reasonable professionals could not differ.'" Id. at 501 (alteration in original) (quoting M.G., 427 N.J. Super. at 174). We further noted that an "evaluation of a mental state . . . is among the most 'complex diagnoses.'" Ibid. (citation omitted).

In James v. Ruiz, 440 N.J. Super. 45, 72 (App. Div. 2015), we determined the trial court erred in admitting a non-testifying doctor's disputed conclusion that a CT-scan revealed a "disc bulge." We noted that even though we had "no reason to

believe that the 'motives, duties and interest[s]' of [the doctor] were anything other than benign," id. at 72, his conclusions were "sufficiently complex and controversial to require them to be excluded" under N.J.R.E. 808, id. at 73.

Dr. Gayle's statement in the medical report that Nancy was sexually assaulted was inadmissible because it is "sufficiently complex and controversial," ibid., constitutes an opinion on "a critical issue such as the . . . cause of the condition in question," Rosen, 425 N.J. Super. at 405, and is based on Dr. Gayle's "subjective judgment," N.T., 445 N.J. Super. at 500. We find no basis to conclude that Dr. Gayle's conclusion was based solely on objective criteria, or upon criteria "which reasonable professionals could not differ." Id. at 501. It was error for the trial court to admit and rely upon that portion of Dr. Gayle's report containing her conclusion and diagnosis that Nancy was sexually assaulted.

For the same reasons, the Crisis Unit's discharge summary stating Nancy suffered from PTSD as a result of alleged sexual abuse was inadmissible under N.J.R.E. 808. As we noted in N.T., "evaluation of a mental state . . . is among the most 'complex diagnoses.'" Id. at 501; see also N.B., 452 N.J. Super. at 526 (holding that the trial court erred in admitting the psychologist's PTSD diagnosis because PTSD "is a complex

diagnosis given the disorder's definitions, which notably include a wide variety of symptoms, and is not a monolithic disease with a uniform structure that does not permit individual variation").

We find no basis to depart from these principles, and conclude the court erred in admitting the PTSD diagnosis without testimony from Dr. Liotta regarding how she reached that diagnosis. N.B., 452 N.J. Super. at 526. Thus, neither the Crisis Unit's PTSD diagnosis nor Dr. Gayle's conclusion that Nancy was sexually assaulted constituted admissible corroborative evidence of Nancy's statement under N.J.S.A. 9:6-8.46(a)(4). Ibid.

Because we conduct a de novo review of the court's determination of whether there was sufficient corroboration to permit reliance on Nancy's statements, we next consider whether there was other admissible evidence supporting a finding of corroboration under N.J.S.A. 9:6-8.46(a)(4). See id. at 521. Based on our review of the record, we are convinced that although the court erred by admitting Dr. Gayle's diagnosis that Nancy was sexually assaulted, Dr. Gayle's factual and objective findings that Nancy suffered from tenderness in her vaginal area and her hymen was not intact provided "some" admissible

circumstantial evidence corroborating Nancy's statements.  Id. at 522.

In N.B., the trial court relied upon a non-testifying psychologist's report that the child suffered from PTSD "as a result of exposure to domestic violence" to support its finding of sufficient corroboration under N.J.S.A. 9:6-8.46(a)(4).  Id. at 523.  On appeal, we determined that although the conclusion was an inadmissible complex diagnosis, the psychologist's objective "factual observations" were admissible.  Id. at 526; see also N.T., 445 N.J. Super. at 490 (determining factual observations are admissible).

Dr. Gayle's factual observations, made four days after the alleged sexual assault, that Nancy had tenderness in her vaginal area and that her hymen was not intact constituted "some" circumstantial evidence corroborating Nancy's statement that defendant "forcibly" digitally penetrated her vagina.  See N.B., 452 N.J. Super. at 522 (requiring "[s]ome direct or circumstantial evidence beyond the child's statement").  We do not determine that Dr. Gayle's factual observations independently establish that Nancy was sexually assaulted.  That issue is not before us.  Rather, we determine only that Dr. Gayle's objective findings of injuries to Nancy's vaginal area provide some circumstantial evidence corroborating Nancy's

statement that defendant sexually assaulted her in the manner she described in her statements. Id. at 521-22.

Moreover, the court did not err in finding defendant's statements provided additional corroboration of Nancy's statements. Defendant argues that he "only admitted to being with Nancy at the time of [the] allegations," and "[p]resence, alone cannot satisfy the corroboration requirement." This argument ignores, however, that defendant did not simply state he was with Nancy at the time of the alleged assault, but rather he corroborated many of the details concerning the circumstances Nancy described surrounding the alleged sexual assault, with the exception of the sexual assault itself. We are convinced that his admission of those details, when coupled with Dr. Gayle's objective findings of injuries to Nancy's vaginal area, provide more than sufficient corroboration of Nancy statements describing the sexual assault to satisfy the requirements of N.J.S.A. 9:6-8.46(a)(4).

In Z.P.R., there was no direct evidence corroborating the child's sexual assault allegation. 351 N.J. Super. at 432. Rather, the Division presented evidence that the child possessed "precocious sexual knowledge." Id. at 436. The trial court determined this did not sufficiently corroborate the child's statements regarding a parent's alleged sexual abuse. Ibid. We

reversed, holding that "we have no doubt that evidence of age-inappropriate sexual behavior could provide the necessary corroboration required by N.J.S.A. 9:6-8.46(a)(4)."  Ibid.

In N.J. Div. of Youth & Family Servs. v. H.B., 375 N.J. Super. 148, 154-55 (App. Div. 2005) the Division[3] alleged that the defendant exposed her daughter, Cathy, to "the risk of emotional and physical harm by permitting her husband . . . , Cathy's stepfather, to reside in the home after learning" that Cathy had accused him of sexually molesting her.  On appeal, the Division argued that the trial court erred in determining the stepfather's Megan's Law status was inadmissible to corroborate Cathy's allegations he sexually assaulted her.  Id. at 156.  We reversed, holding that "the details of [the stepfather's prior conviction for a sex offense was] directly relevant to establishing whether he in fact molested Cathy . . . [because they] may . . . reveal similarities in the 'plan' or 'preparation' utilized by [the defendant] . . . ."  Id. at 181.

Although "eyewitness testimony, a confession, [or] an admission," would be most effective in establishing corroboration, L.A., 357 N.J. Super. at 166, only "[s]ome direct or circumstantial evidence . . . is required," N.B., 452 N.J.

---

[3]  Pursuant to L. 2012, c. 16, effective June 29, 2012, the Division of Youth and Family Services was renamed the Division of Child Protection and Permanency.

Super. at 522. Defendant's admissions corroborated almost every detail of Nancy's statements concerning the alleged sexual assault, including the text message exchange between them earlier in the night, when he picked her up, where they went, and when they returned. The court did not err in finding that defendant's statements sufficiently corroborated Nancy's account, because they "provid[ed] support for" her statement, N.B., 452 N.J. Super. at 521, and "relate[d] directly to" defendant, L.A., 357 N.J. Super. at 166. In addition, Dr. Gayle's objective findings provided some evidence corroborating the only detail defendant denied — that he forcibly digitally penetrated Nancy's vagina.

We are therefore satisfied Nancy's statement was sufficiently corroborated and the Division provided sufficient credible evidence supporting the court's finding that defendant abused or neglected Nancy by sexually assaulting her on February 8, 2015, and placed his biological children at substantial risk of harm as a result. N.B., 452 N.J. Super. at 513, 521.

We also observe that defendant does not contend the court erred in its findings concerning his four biological children, or argue that Nancy's remaining sexual assault allegations supporting that finding were uncorroborated. Generally, an issue not briefed on appeal is deemed waived. Jefferson Loan

21

Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008); Zavodnick v. Leven, 340 N.J. Super. 94, 103 (App. Div. 2001). We nevertheless consider whether Nancy's remaining allegations of prior instances of sexual abuse were sufficiently corroborated to support the court's finding of abuse or neglect.

As noted, the court's abuse or neglect finding was not limited to the February 8, 2015 sexual assault. The court also based its abuse or neglect finding on Nancy's reports that defendant sexually touched her on three prior occasions. With regard to her statement regarding the "test," defendant admitted he "took [Nancy] through a test about boys," but denied having physical contact. He stated he did so to teach Nancy "what boys can do to get slick and get their feel off on young girls." As with the February 8, 2015 assault, the only fact defendant failed to corroborate was the inappropriate sexual touching itself. Although defendant makes no arguments otherwise, we find that his admission concerning the administration of the "test" provide some evidence supporting Nancy's version of the event and therefore provides sufficient corroboration of Nancy's account under N.J.S.A. 9:6-8.46(a)(4). N.B., 452 N.J. Super. at 522.

Nancy also reported that defendant took her clothes off while she was sleeping. Defendant admitted he did so, but

denied any sexual intentions. We again find defendant's admission provided sufficient corroboration of Nancy's statement to permit the court's reliance on Nancy's version of the event. Ibid.

Lastly, Nancy described that defendant humped her from behind when she was twelve. Our review of the record, however, reveals no admissible evidence corroborating Nancy's statement concerning that event. Nancy's mere repetition of her account was insufficient. Id. at 523.

Although the Division did not provide sufficient corroboration to warrant the court's consideration of Nancy's statement concerning that event, we are satisfied the totality of the admissible evidence corroborates Nancy's statements concerning the other events and supports the court's findings of abuse or neglect of the five children.

Defendant's remaining arguments are without merit sufficient to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION