# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2062-18T4

NEW JERSEY DIVISON
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

N.V.,

     Defendant-Appellant,

and

A.H., J.D.M., and E.R.-L.,

     Defendants.

_____

IN THE MATTER OF D.D.C.H.,
E.E.R.-L., and M.D.C., minors.

_____

Submitted February 3, 2020 – Decided August 14, 2020

Before Judges Ostrer and Susswein.

On appeal from Superior Court of New Jersey,

Chancery Division, Family Part, Hudson County, FN-09-0206-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Carol L. Widemon, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Sara M. Gregory, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Danielle Ruiz, Designated Counsel, on the brief).

PER CURIAM

Defendant, N.V., appeals from a Family Part order finding that she abused or neglected her twelve-year-old daughter, M.D.C., by failing to protect her from sexual abuse committed by the child's stepfather, E.R.-L.[1]  M.D.C. told child welfare authorities and police that she had informed her mother about the sexual misconduct on two occasions.  The key issue in this appeal is whether the Division of Child Protection and Permanency (Division) satisfied its burden to

---

[1]  We use initials to protect the identities of the parties, victim, and family members involved in this matter.  R. 1:38-3(d)(11).

corroborate M.D.C.'s out-of-court statement at the Title Nine fact-finding hearing.

To meet that burden, the Division introduced statements defendant made to a Division caseworker and later repeated to a psychologist conducting a parental evaluation. The gravamen of defendant's argument on appeal is that the statements she made acknowledging that M.D.C. told her about the sexual abuse should not have been admitted into evidence at the fact-finding hearing. Defendant contends the admissions she made to the psychologist, who did not testify at the hearing, were presented to the court in the form of inadmissible hearsay. Defendant further contends the admissions she made to the Division caseworker in the course of two interviews, conducted a few hours apart, should have been suppressed as the fruit of Fifth Amendment violations. Defendant asserts the caseworker did not administer Miranda[2] warnings at the outset of the initial interview and thereafter did not scrupulously honor defendant's right to remain silent, which defendant had invoked when questioned by police before the second interview with the Division caseworker.

After carefully reviewing the record in light of the applicable legal principles, we affirm the trial court's ruling that defendant abused or neglected

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2062-18T4

her daughter. We agree with defendant the admissions she made to the non-testifying psychologist during the parental evaluation were inadmissible because the Division failed to lay the foundation for the business records exception to the hearsay rule, N.J.R.E. 803(6)(c). That error was harmless, however, because the admissions defendant made to the Division caseworker were properly admitted into evidence and sufficiently corroborated the child's out-of-court statement. We need not decide whether the Division caseworker violated defendant's Miranda rights because regardless of the resolution of defendant's fact-sensitive Fifth Amendment contentions, we would decline to extend the exclusionary rule that applies in criminal cases to the Title Nine fact-finding hearing convened in this case. We therefore conclude the trial court's finding of abuse or neglect was reasonably based on competent admissible evidence and affirm the hearing court's order.

## I.

In December 2017, the Division filed a verified complaint for care and supervision of defendant's three biological children, D.D.C.H, E.E.R-L., and M.D.C. In June 2018, the trial court conducted a Title Nine fact-finding hearing, see N.J.S.A. 9:6-8.44 (defining the term "fact-finding hearing" as "a hearing to determine whether the child is an abused or neglected child" as defined in Title Nine), after which it entered a finding of abuse or neglect against defendant

4

under N.J.S.A. 9:6-8.21(c).  Thereafter, the court entered a dispositional order that, in pertinent part, continued previously imposed requirements that defendant attend individual counseling and that M.D.C. receive trauma-focused therapy.  After a final compliance review, the court issued orders terminating litigation and transferring sole legal and physical custody of the children to defendant.  Defendant now appeals the trial court's finding she had abused or neglected M.D.C.

## II.

The trial court heard testimony from two witnesses, a Division caseworker, Susana Crespo, and a professional consultant who appeared as the Division's expert, Dr. Anthony D'Urso.  The court also admitted into evidence several documentary exhibits, including Crespo's investigation summary and reports prepared by non-testifying clinicians who evaluated defendant and M.D.C.

## A.

### Ms. Crespo's Testimony

On June 24, 2017, the Division received a referral from a mental health worker at Palisades Medical Center concerning suspected sexual abuse of M.D.C., then nine years old.  M.D.C. presented with a rash that extended from her vaginal area to her rectum, leading the hospital physician to suspect she was

infected with herpes. The referral was assigned to Crespo, who contacted the Hudson County Prosecutor's Office for direction on how to proceed. Lieutenant Turro from the Prosecutor's Special Victims Unit (SVU) told Crespo "to proceed with the investigation and if any disclosure to call" the Prosecutor's Office.

Crespo arrived at Palisades Medical Center at 7:05 p.m. She spoke with the doctor treating M.D.C. before introducing herself to defendant and the child. Crespo explained that she was there to investigate the referral and requested to speak with M.D.C. in private. Defendant initially objected but eventually relented.

M.D.C. disclosed to Crespo that her stepfather, E.R.-L., "touched her in her private area at the old house [in Elizabeth]. She stated that he had rubbed his hand in a circular motion on her skin, in her genital area. And that [s]he thinks he put his finger inside because it hurt it." M.D.C. said she told her mother about E.R.-L. rubbing her genitals and demonstrated for her mother the circular motion E.R.-L. had used. M.D.C. told Crespo that E.R.-L. left the house in Elizabeth shortly after she told her mother about the incident, but E.R.-L. eventually moved back into the house.

M.D.C. told Crespo that a few days after E.R.-L. moved back in, the family moved from Elizabeth to a house in West New York. M.D.C. told Crespo that E.R.-L. "touched her private area on her skin with his private area" two or

three times in the new house. She told Crespo "there were times that he put saliva on his private area and then he would put it by her private area and it would hurt her a lot." M.D.C. told Crespo the most recent incident with E.R.-L. occurred one week before the interview, on June 16, 2017.

M.D.C. further told Crespo that her older sister, D.D.C.H., took care of her when their mother was working. M.D.C. added her mother "always told her sister not to leave [M.D.C.] alone with [E.R.-L.] and to watch her all the time." M.D.C. told Crespo the sexual abuse occurred while defendant was at work and her sister was in a different room. M.D.C. related to Crespo that she told her mother that while they were living in West New York, E.R.-L. put his hand on the outside of her private part. M.D.C. explained to Crespo she did not tell her mother that E.R.-L. placed his private part on her private part because she did not want E.R.-L. to get arrested. M.D.C. told Crespo that her mother told her that she would speak with E.R.-L., and that he would not do those things to her again.

Around 8:00 p.m., Crespo contacted Lieutenant Turro and informed him as to what she learned from her interview of M.D.C. Turro requested Crespo bring the family to the SVU facility. Crespo told Turro she would do so after she interviewed D.D.C.H.

Crespo interviewed D.D.C.H. and obtained more information concerning the family's home life. D.D.C.H. confirmed that defendant told her she did not want E.R.-L. to take care of M.D.C.

After concluding her interview with D.D.C.H, Crespo contacted Lieutenant Turro around 9:00 p.m. Turro told Crespo he would go to the hospital to speak with the doctor. After speaking with Turro, Crespo told defendant that a criminal investigation was underway. Crespo then interviewed defendant while they waited for Turro to arrive.

Crespo asked defendant several times whether M.D.C. had ever told her that E.R.-L. had engaged in sexually inappropriate behavior. At first, defendant denied knowing anything about E.R.-L. sexually abusing M.D.C. During this portion of the interview, defendant repeatedly asked Crespo if she was questioning her for the purpose of arresting her. Crespo told defendant she was just trying to understand what had happened. Eventually, defendant admitted to Crespo that while the family was living in Elizabeth, M.D.C. told her about an incident in which E.R.-L. had touched M.D.C. on her private area in a circular motion. Defendant said M.D.C. demonstrated the action E.R.-L. performed.

Defendant confirmed she told E.R.-L. to leave the house in Elizabeth because of M.D.C.'s disclosure of sexual misconduct. She also admitted to Crespo that she permitted E.R.-L. to return to the household shortly thereafter.

A-2062-18T4

Defendant told Crespo she made certain M.D.C. was not left alone with E.R.-L. Defendant denied knowing anything about any subsequent sexual misconduct while the family was living in West New York.

Sometime before 9:30 p.m., Turro arrived at Palisades Medical Center and met with Crespo to discuss what she had learned from her interviews. Crespo and Turro arranged for M.D.C. and defendant to travel to the SVU headquarters. Crespo then left to interview E.R.-L. and his nieces.[3]

At SVU, M.D.C. provided a statement to detectives consistent with the statement she had given to Crespo. Defendant asserted her right to remain silent and refused to provide a statement. Defendant and M.D.C were then taken to Christ Hospital to complete a sexual assault forensic examination.

At 12:30 a.m., Crespo arrived at SVU headquarters. She was informed defendant had invoked her right to remain silent. She also was told the police did not intend to charge defendant at that time.[4] Crespo then went to Christ Hospital to continue her discussion with defendant. Crespo asked defendant

---

[3] During subsequent interviews with the police, E.R.-L. admitted he sexually abused M.D.C. multiples times at the houses in Elizabeth and West New York. He told police defendant did not know about the abuse and never confronted him.

[4] We note that defendant was never arrested and never charged with a criminal offense relating to the abuse or neglect of M.D.C.

whether M.D.C. had disclosed to her that E.R.-L. had committed a second act of abuse, this time while they were living in West New York. Defendant admitted to Crespo that M.D.C. had told her that E.R.-L. had touched her private area in a circular motion while they were living at the house in West New York.

B.

Dr. D'Urso's Testimony

Dr. D'Urso testified the Division requested that Audrey Hepburn Children's House (AHCH) conduct a psycho-social evaluation of M.D.C. and a parental evaluation of defendant. Dr. Richard Coco evaluated defendant, and Dr. Sara Moore evaluated M.D.C. The State introduced their reports through Dr. D'Urso, the supervising psychologist at AHCH. Neither Coco nor Moore testified at the fact-finding hearing.

Dr. D'Urso testified that in the course of the evaluation conducted by Dr. Moore, M.D.C. stated she was abused in Elizabeth and West New York. D'Urso testified M.D.C. told Dr. Moore that E.R.-L. fondled her and had placed his penis near her labia. M.D.C. also told Dr. Moore she had informed her mother at different times that E.R.-L. was abusing her. Dr. Moore determined there was clinical support for multiple sexual-contact incidents.

Dr. D'Urso also testified as to what defendant told Dr. Coco during the parental evaluation. Specifically, Dr. D'Urso testified that defendant admitted

to Dr. Coco that M.D.C. had twice reported to her that she had been touched inappropriately by E.R.-L. Dr. D'Urso also testified that defendant told Dr. Coco she had instructed E.R.-L. to leave the household but allowed him to return because it seemed to her that M.D.C. was not all that affected by the sexual abuse.

## C.

## Hearing Court's Factual Findings

The hearing court found Crespo to be a credible witness and her testimony to be uncontroverted. The court credited Crespo's testimony concerning M.D.C.'s descriptions of the sexual abuse she suffered and her disclosures to defendant that E.R.-L. was abusing her. The court also credited Crespo's testimony that (1) defendant admitted she was aware of E.R.-L.'s sexual misconduct based on two separate disclosures from M.D.C., and (2) defendant admitted she had permitted E.R.-L. to continue to live with the family after learning about the sexual abuse.

The court found Dr. D'Urso's testimony credible as well. The court credited Dr. D'Urso's testimony that defendant admitted to Dr. Coco during the parental evaluation that M.D.C. had disclosed E.R.-L's sexual misconduct to her.

The court also found that M.D.C.'s disclosures of E.R.-L.'s sexual abuse were credible. The judge explained:

11

[M.D.C.] reported sexual abuse to [Crespo], to the clinician at [AHCH], and she was consistent. Even though, and I think the reasoning here by [AHCH] is significant, as Dr. D'Urso testified [M.D.C.] had no motive to fabricate, in fact she was pulled the other way. She didn't want to disrupt her family. She didn't want to see her stepfather go to jail. . . .

So, in essence, she had no motive to fabricate because she wanted her father home to preserve the unit of the family. The doctor noted she was also consistent in her detail that she gave about the acts of abuse, that the knowledge she had including that [E.R.-L.] used saliva to lubricate his sexual organ was beyond what the typical nine-year old would be expected to fabricate.

Importantly for purposes of this appeal, the hearing court found that both Crespo's testimony and D'Urso's testimony corroborated M.D.C.'s statements regarding defendant's knowledge of the sexual misconduct. The court thereupon found that defendant was aware of the allegations of sexual abuse but failed to notify police or the Division and failed to keep E.R.-L. away from M.D.C. apart from briefly expelling E.R.-L. from the house in Elizabeth. The court concluded that defendant thereby abused or neglected her daughter by failing to protect her from the ongoing sexual abuse committed by E.R.-L.

III.

We begin our analysis by acknowledging the legal principles governing this appeal. "[W]e accord substantial deference and defer to the factual findings

12

of the Family Part if they are sustained by 'adequate, substantial, and credible evidence' in the record." N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 521 (App. Div. 2017) (quoting N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014)). "This is '[b]ecause of the family courts' special jurisdiction and expertise in family matters.'" N.J. Div. of Child Prot. & Permanency v. A.D., 455 N.J. Super. 144, 155 (App. Div. 2018) (quoting N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (alteration in original)).

At a fact-finding hearing to determine whether a child was abused or neglected within the meaning of N.J.S.A. 9:6-8.21(c), "[t]he Division bears the burden of proof . . . and must prove . . . harm . . . by a preponderance of the evidence." N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 22 (2013); accord N.J.S.A. 9:6-8.46(b)(1). The Division must meet its burden with "competent, material and relevant" proofs. N.J.S.A. 9:6-8.46(b).

Absent an abuse of discretion, we defer to the Family Court to determine whether the Division's proofs are admissible. N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 571 (App. Div. 2010) (applying an abuse of discretion standard of review to trial courts' determinations on the admissibility of other-crime evidence (citing State v. Darby, 174 N.J. 509, 518

(2002))). "Under that standard, an appellate court should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling "was so wide of the mark that a manifest denial of justice resulted."'" State v. Kuropchak, 221 N.J. 368, 385 (2015) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). In the context of a hearsay error, moreover, we will not reverse the trial court unless "the error led the [factfinder] to a result it otherwise might not have reached." Neno v. Clinton, 167 N.J. 573, 587 (2001) (quoting State v. Hightower, 120 N.J. 378, 410 (1990)).

We review a trial court's legal conclusions de novo. State v. Smith, 212 N.J. 365, 387 (2012) (citing State v. Handy, 206 N.J. 39, 45 (2011)). Where a court's ruling "'essentially involved the application of legal principles and did not turn upon contested issues of witness credibility,' we review the court's corroboration determination de novo." A.D., 455 N.J. Super. at 156; see also N.B., 452 N.J. Super. at 521 (reviewing de novo the trial court's conclusion that a child's statements were corroborated pursuant to N.J.S.A. 9:6-8.46(a)).[5]

_____

[5]   The Division and M.D.C.'s Law Guardian both contend the appropriate standard for our review of the trial court's corroboration determination is plain error because defendant did not raise the issue below. See R. 2:10-2 (disregarding error raised for the first time on appeal "unless it is of such a nature as to have been clearly capable of producing an unjust result"). Our own review of the record reveals that defendant did in fact object to Dr. D'Urso's testimony and to the admissibility of the expert reports as hearsay. Defendant also

A child has been abused or neglected when the child's

> physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof.
>
> [N.J.S.A. 9:6-8.21(c)(4)(b).]

"[T]he phrase 'minimum degree of care' refers to conduct that is grossly or wantonly negligent, but not necessarily intentional." G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999). Conduct is "willful or wanton if done with the knowledge that injury is likely to, or probably will, result." Ibid. (citing McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 305 (1970)). Willful or wanton conduct also includes "actions taken with reckless disregard for the consequences." Ibid. (citations omitted). In sum, "[w]here an ordinary reasonable person would understand that a situation poses dangerous risks and acts without regard for the potentially serious consequences, the law holds him [or her] responsible for the injuries he [or she] causes." N.J. Div. of Youth &

_____

challenged the admissibility of her statements to Crespo because of an alleged Miranda violation. Accordingly, although the arguments defendant raises on appeal are more detailed than the arguments she presented to the hearing court, we do not apply the plain error standard on these issues.

Family Servs. v. A.R., 419 N.J. Super. 538, 544 (App. Div. 2011) (quoting G.S., 157 N.J. at 179).

Importantly for purposes of this appeal, the relevant statute provides that the Division may introduce "previous statements made by the child relating to any allegations of abuse or neglect . . . , provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect." N.J.S.A. 9:6-8.46(a)(4) (emphasis added).

In our recent decision in A.D., we explained the legal principles involved in corroborating a child's statement under N.J.S.A. 9:6-8.46(a)(4):

> A child's statement need only be corroborated by "[s]ome direct or circumstantial evidence beyond the child's statement itself." "The most effective types of corroborative evidence may be eyewitness testimony, a confession, an admission or medical or scientific evidence." However, corroboration of child sexual abuse does not have to be "offender-specific," because "[i]t would be a rare case where evidence could be produced that would directly corroborate the specific allegation of abuse between the child and the perpetrator." Rather, corroborative evidence "need only provide support" for the child's statements and may be circumstantial.
>
> [A.D., 455 N.J. Super. at 157 (alterations in original) (emphasis added) (citations omitted).]

The categories of corroborative evidence a trial court may rely upon under N.J.S.A. 9:6-8.46(a)(4) are numerous and varied. See Z.P.R., 351 N.J. Super.

at 436 (noting that "[s]uch evidence has included a child victim's precocious knowledge of sexual activity, a semen stain on a child's blanket, a child's nightmares and psychological evidence" (quoting State v. Swan, 790 P.2d 610, 615–16 (Wash. 1990))). All manner of corroborative evidence shares a common and essential prerequisite: "[t]he evidence must be independently admissible for a court to deem it corroborative of a child's statement." A.D., 455 N.J. Super. at 157; see also N.B., 454 N.J. Super. at 524–26 (concluding evidence was insufficient to corroborate the child's statement because the evidence was inadmissible hearsay).

## IV.

Defendant does not dispute the Division established that M.D.C. had been sexually abused on multiple occasions by her stepfather. The dispute centers, rather, on whether the Division proved that defendant became aware of that abuse and thereafter failed to take reasonable precautions to protect her daughter from further harm. As noted, the gravamen of defendant's argument on appeal is the Division failed to present competent admissible evidence to corroborate M.D.C.'s statement that she had told defendant about the sexual abuse. The hearing court found corroboration by relying on defendant's statements to Crespo and Dr. Coco in which defendant admitted that her daughter told her of the sexual abuse. There is no doubt that defendant's admissions, if presented to

17

the hearing court as admissible evidence, would corroborate the child's statement for purposes of N.J.S.A. 9:6-8.46(a). The critical question before us, therefore, is whether defendant's corroborative admissions were independently admissible. See A.D., 455 N.J. Super. at 157 (requiring corroborative evidence of a child's statement to be independently admissible).

The Division introduced defendant's admissions through two witnesses, Division caseworker Crespo, who related what she learned from her interviews, and Dr. D'Urso, who related what he learned from reading a report prepared by a non-testifying doctor who interviewed defendant in the course of the parental evaluation. We note that if defendant's admissions were properly admitted at the hearing through either witness, the Division's burden of corroboration under N.J.S.A. 9:6-8.46(a) would be satisfied. Thus, in order to prevail, defendant must show that the trial court erred both in admitting her admissions through Dr. D'Urso's testimony and in admitting her admissions through Crespo's testimony.

A.

We first address the admissibility of defendant's statement that was made to Dr. Coco. The Division did not present Dr. Coco as a witness to testify as to what defendant told him during the parental evaluation interview. Rather, defendant's admission to Dr. Coco was elicited through the testimony of Dr.

18

D'Urso, who testified as an expert.[6]  Although Dr. D'Urso supervised Dr. Coco, he was not present at the interview during which defendant made her corroborative admission.  The Division thus presented defendant's admissions to Dr. Coco as substantive proof in the form of hearsay.

Hearsay statements, of course, are inadmissible unless they fall within an exception to the hearsay rule.  N.J.R.E. 802.  The Division argues that defendant's statement to Dr. Coco that was memorialized in his parental evaluation report is admissible as substantive evidence under the business-record exception, N.J.R.E. 803(c)(6).[7]  That exception provides:

---

[6]  We note that New Jersey Rule of Evidence 703 permits an expert to base his or her opinion on facts or data "perceived by or made known to the expert at or before the hearing."  "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."  Ibid.  However, "[a]n important limitation . . . is that if the 'facts or data' relied upon by the expert are not admissible, then the court or trier of fact may only consider those facts or data to the extent it is helpful in understanding the expert's opinions or assessing their credibility."  N.J. Div. of Child Prot. & Permanency v. T.U.B., 450 N.J. Super. 210, 241–42 (App. Div. 2017).  The facts, "which are often hearsay, may not be considered for their truth as substantive proof."  Id. at 242.

[7]  N.J.S.A. 9:6-8.46(a)(3) and Rule 5:12-4(d) codify the Division's ability to introduce reports prepared by the Division's staff and professional consultants.  Importantly, however, a report offered under the statute and rule "may be admitted only if it satisfies the prerequisites for admissibility set forth in N.J.R.E. 803(c)(6)."  N.J. Div. of Youth & Family Servs. v. B.M., 413 N.J. Super. 118, 131 (App. Div. 2010); accord N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 487 (App. Div. 2016) (admitting reports prepared

A-2062-18T4

A statement contained in a writing or other record of acts, events, conditions, and, subject to Rule 808, opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make it, unless the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy.

[N.J.R.E. 803(c)(6).]

Thus, "[t]o qualify as a business record under N.J.R.E. 803(c)(6), a writing must meet three conditions: it must be made in the regular course of business, within a short time of the events described in it, and under circumstances that indicate its trustworthiness." Kuropchak, 221 N.J. at 387–88 (citing State v. Matulewicz, 101 N.J. 27, 29 (1985)).

The Division did not present a business-records certification in support of the admissibility of Dr. Coco's report. See N.T., 445 N.J. Super. at 500 (holding that a Division worker's certification supported the admissibility of a record under N.J.R.E. 803(c)(6)). Instead, the Division relied solely on testimony from

___

by Division professional consultants and staff only if the reports "meet the requirements of N.J.R.E. 803(c)(6), [regardless of] whether the report is offered under N.J.S.A. 9:6-8.46(a)(3)[] [or] Rule 5:12-4(d)"); see also N.B., 452 N.J. Super. at 524 (admitting reports prepared by professional consultants of the Division "for the purpose of guiding the Division in determining the appropriate course of action, and when they are maintained in the regular course of the Division's business").

Dr. D'Urso to lay the foundation for the report's admissibility under the business records exception. Dr. D'Urso testified as follows concerning the process for preparing Dr. Coco's report:

> Q: [T]his was an evaluation prepared by your team. Is that correct?
>
> A: Correct.
>
> Q: And when it comes to the team philosophy that you indicated the psycho-social evaluations, is it similar to – is that process similar when you do parenting evaluations for individuals?
>
> A: yes, it applies to every family member.
>
> Q: [D]oes your team typically prepare a written report following the parenting evaluation for your signature to review?
>
> A: Oh yes.

We are constrained to conclude this scant testimony was inadequate to establish Dr. Coco's report as a business record within the meaning of N.J.R.E. 803(c)(6). While Dr. D'Urso's testimony may tend to show that AHCH regularly produces expert reports in a trustworthy manner, his testimony did not establish that the report was "made at or near the time of observation" as required by N.J.R.E. 803(6)(c). The report itself indicates Dr. Coco interviewed defendant on August 11, 2017. It also indicates the report was not completed until December 7, 2017. That completion date is consistent with Dr. D'Urso's

testimony that Dr. Coco's report "went out in December." The record before us thus shows there was a four-month gap period between the time when defendant made her admissions to Dr. Coco and the date when Dr. Coco issued his report.

We are mindful that the process of clinically evaluating a parent suspected of abuse or neglect is a deliberative one. Even so, we do not believe a report completed four months after an interview qualifies as one made "within a short time of the events described in it." Kuropchak, 221 N.J. at 388 (citing Matulewicz, 101 N.J. at 29).

We reach this conclusion based solely on the limited record before us. A more fulsome record regarding the report's preparation might have led us to a different conclusion. We appreciate, for example, that Dr. Coco likely based his report on notes he took contemporaneously with defendant's evaluation. However, the Division did not elicit testimony concerning Dr. Coco's note-taking practices. Cf. State v. P.S., 202 N.J. 232, 254 (2010) (holding that a caseworker's report of an interview with a child victim was sufficiently trustworthy under N.J.R.E. 803(c)(27) when the notes were taken contemporaneous with the interview and the caseworker testified her report reflected the content of her notes). We therefore are constrained to conclude the trial court erred in admitting Dr. Coco's report for the purpose of corroborating M.D.C.'s statement.

22

B.

We turn next to defendant's contention that the trial court should not have considered defendant's admissions to Crespo because the Division caseworker violated defendant's Fifth Amendment rights. Defendant argues Crespo was required to administer Miranda warnings before interviewing defendant at Palisades Medical Center. She further contends Crespo failed to scrupulously honor defendant's prior invocation of her right to remain silent when Crespo interviewed defendant at Christ Hospital. See Michigan v. Mosley, 423 U.S. 96, 104 (1975) (requiring police to "scrupulously honor[]" a defendant's invocation of his or her right to remain silent); State v. Harvey, 151 N.J. 117, 221 (1997) (following Mosley); see also State v. Hartley, 103 N.J. 252, 278–79 (1986) (concluding that failure by police to re-administer Miranda warnings before interrogating an accused who has previously invoked the right to remain silent constitutes a failure to scrupulously honor the assertion).

Defendant contends that for all practical purposes, she was in custody when she was interviewed by Crespo at Palisades Medical Center and at Christ Hospital. She also contends that Crespo was acting in cooperation and consultation with detectives in the Prosecutors Office. We need not decide, however, whether the circumstances of the interviews at Palisades Medical Center and later at Christ Hospital were sufficiently coercive as to be tantamount

23

to custodial interrogation requiring administration of <u>Miranda</u> warnings. <u>Cf.</u> <u>State v. P.Z.</u>, 152 N.J. 86, 103, 121 (1997) (noting on the facts of that case that "none of the indicia of coercion were present" and holding the Division caseworker was not required to give <u>Miranda</u> warnings to parent prior to non-custodial interview concerning child abuse or neglect); <u>see also</u> <u>State v. Helewa</u>, 223 N.J. Super. 40, 51–52 (App. Div. 1988) (equating Division caseworker to a law enforcement officer and requiring the caseworker to administer <u>Miranda</u> warnings to a parent who was arrested and confined during interview); <u>State v.</u> <u>Flower</u>, 224 N.J. Super. 208, 220 (Law Div. 1987), <u>aff'd</u>, 224 N.J. Super. 90 (App. Div. 1988) (suppressing a confession a defendant made to a Division investigator because the investigator failed to inform the defendant of his <u>Miranda</u> rights). Nor do we need to decide whether Crespo violated defendant's Fifth Amendment rights when she re-interviewed defendant at Christ Hospital after being advised that defendant had invoked her right to remain silent when questioned by police earlier that night at SVU headquarters.[8]

---

[8] We express no opinion on whether in the circumstances of this case Crespo was required to provide <u>Miranda</u> warnings to defendant before interviewing her at Palisades Medical Center, or before re-interviewing her at Christ Hospital. Nor do we express an opinion on whether the caseworker's interview at Christ Hospital was barred by defendant's assertion of the right to remain silent when an SVU detective attempted to take a statement from her earlier that night. We note only that the admission defendant made to the Division caseworker at the

We choose not to decide whether Crespo violated defendant's Fifth Amendment rights under <u>Miranda</u> and <u>Mosley</u> because ultimately, defendant's argument rests on a faulty premise. She assumes that the exclusionary rule that applies in criminal cases applies as well to a Title Nine fact-finding hearing. Defendant cites no authority, however, to support that proposition. Even assuming for purposes of argument that any or all of defendant's admissions to Crespo would be subject to suppression in a criminal trial, we would decline to extend the exclusionary remedy to the Title Nine fact-finding hearing. The purpose of a hearing under N.J.S.A. 9:6-8.44 is not to prosecute or to punish. Rather, its purpose is to gather facts with which a court can fashion orders to protect a specific child from future harm. We note that in this instance, the Court's finding of abuse or neglect led to interventions and services that resulted in re-unification so that today, defendant enjoys legal and physical custody of M.D.C.

It is well-established that a person invoking the Fifth Amendment privilege against self-incrimination may do so "in any . . . proceeding, civil or criminal, . . . where the answers might tend to incriminate him [or her] in future

---

initial interview at Palisades Medical Center, when considered in conjunction with other evidence presented at the fact-finding hearing, would have been sufficient to corroborate M.D.C.'s statement that defendant was told about the abuse.

criminal proceedings." P.Z., 152 N.J. at 101 (citations omitted). That does not mean, however, the suppression remedy designed to redress constitutional violations in any such future criminal proceeding applies as well in civil proceedings. We do not mean to suggest that a Title Nine finding of abuse or neglect against a parent does not carry significant consequences, including enrollment in a central registry. See N.J. Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 195 (2015) (noting the consequence of enrollment in a registry upon a finding of abuse or neglect (citing N.J.S.A. 9:6-8.11)). Nor do we disagree with defendant that Title Nine fact-finding hearings "must be conducted with 'scrupulous adherence to procedural safeguards." N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 401 (2009) (quoting N.J. Div. of Youth & Family Servs. v. A.R.G., 179 N.J. 264, 286 (2004)). Those hearings nonetheless remain civil in nature and do not automatically incorporate all of the procedural safeguards and remedies afforded to the accused in a criminal prosecution. Cf. In re Guardianship of Dotson, 72 N.J. 112, 118 (1976) (noting that while denominated as a civil matter, a Title 30 guardianship case "is almost quasi-criminal in nature, since it seeks to terminate for cause all parental ties between the children here involved and their natural parents").

We add that defendant's reliance on our recent decision in New Jersey Division of Child Protection and Permanency v. S.K., 456 N.J. Super. 245 (App.

Div. 2018), is misplaced. In that case, the trial court convened a Title Nine fact-finding hearing to address the charge of child sexual abuse under N.J.S.A. 9:6-8.21(c)(3). At the time of the hearing, the defendant was being held at the Camden County Jail pending disposition of various criminal charges arising from his alleged sexual misconduct. Id. at 250–51, 271. The Division called S.K. as a witness at the fact-finding hearing to corroborate his daughter's allegations against him. On the advice of his attorney, S.K. invoked his right against self-incrimination and refused to testify at the hearing. Id. at 251.

The judge drew an adverse inference from the defendant's exercise of his right against self-incrimination and then relied on that adverse inference "as substantive evidence to corroborate [the child's] allegations of sexual abuse." Ibid. Indeed, the adverse inference drawn from S.K.'s assertion of the right against self-incrimination at the hearing was the only "substantive evidence" presented by the Division to satisfy the statutory corroboration requirement. Id. at 272. We reversed the trial court's abuse finding, holding that "a Family Part Judge may not draw an adverse inference of culpability against a defendant who invokes his right against self-incrimination to testify at a Title [Nine] fact-finding hearing." Id. at 251.

The circumstances in the case now before us are markedly different from those presented in S.K. The Division did not call defendant as a witness at the

A-2062-18T4

Title Nine fact-finding hearing to corroborate her daughter's statement. The hearing court in this case drew no adverse inference from defendant's election not to testify. Thus, in sharp contrast to the situation in S.K., defendant's exercise of her right against self-incrimination was not the basis for the hearing court's corroboration finding. Rather, corroboration of M.D.C.'s statement was achieved by the introduction of defendant's admission to Crespo that M.D.C. had told her about the sexual abuse. Crespo's testimony concerning defendant's admissions to her was admissible under the Rules of Evidence. Accordingly, defendant's argument can prevail only if her admissions to Crespo were found to be inadmissible for some reason other than application of the evidence rules.

That brings us back full circle to the exclusionary rule. We reiterate that the remedy defendant seeks—to suppress defendant's admissions to Crespo as the fruit of unlawful interrogations—necessarily presupposes that the exclusionary rule that applies in a criminal trial applies as well to a Title Nine fact-finding hearing. We deem it especially noteworthy that defendant cites no precedent that applies the exclusionary rule to a Title Nine hearing, or, for that matter, to any non-criminal proceeding.

We note in this regard that Rule 5:12-6(b) contemplates the sharing of law enforcement information with the Division when there is a criminal investigation of an incident that is the basis of a Division action brought

pursuant to <u>Rule</u> 5:12.  This feature is intended to ensure appropriate access by the Division to the relevant information in the hands of the prosecutor.  Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1.7 on R. 5:12-7 (2020).  We presume that over the span of years, law enforcement and prosecuting agencies across the State have shared a considerable amount of information with the Division.  It is conceivable that at least some law enforcement information shared with the Division would have been deemed inadmissible in a companion criminal case by reason of the manner in which that information had been obtained by law enforcement.  In these circumstances, the dearth of case law applying the exclusionary rule to a Family Part action under <u>Rule</u> 5:12 is telling.

We note finally there is no counterpart in civil or Family Part practice—other than juvenile delinquency proceedings—for a formal motion to suppress evidence and the resulting hearing.  <u>Cf.</u> <u>R.</u> 3:5-7 (setting forth procedural rules for motions to suppress evidence in the Criminal Part).  Defendants often testify at preliminary hearings in criminal cases to offer their account of the interrogation process, knowing that such testimony concerning the lawfulness of an interrogation does not expose them to cross-examination on other issues.

N.J.R.E. 104 (c), (d).[9]  We presume the lack of explicit guidance provided by court rule or evidence rule in civil matters reflects the novelty of defendant's proposal to invoke the suppression remedy.

In this instance, moreover, the hearing court did not have the benefit of briefs and focused legal argument on fact-sensitive <u>Miranda</u>-related issues as would be expected in a criminal matter.  <u>See</u> <u>supra</u> note 5.  As a result, the facts needed to resolve the Fifth Amendment issues defendant raises on appeal were not fully developed at the Title Nine hearing.  Were it necessary for us to address those issues on their substantive merit, we would not exercise original jurisdiction to expand the record.  <u>See</u> <u>State v. Micelli</u>, 215 N.J. 284, 293 (2013) (noting that <u>Rule</u> 2:10-5 "allow[s] [an] appellate court to exercise original jurisdiction to eliminate unnecessary further litigation, but discourage[es] [sic] its use if factfinding is involved" (quoting <u>State v. Santos</u>, 210 N.J. 129, 142 (2012))).

---

[9] N.J.R.E. 104(c) provides in pertinent part, "[w]here by virtue of any rule or law a judge is required <u>in a criminal action</u> to make a preliminary determination as to the admissibility of a statement by the defendant, the judge shall hear and determine the question of its admissibility out of the presence of the jury." (emphasis added).  N.J.R.E. 104 (d) further provides that, "[b]y testifying upon a preliminary matter, the accused does not become subject to cross-examination as to other issues in the case."

Rather, we would remand for further findings of fact and law concerning, for example, whether defendant was essentially in custody during either or both the interview at Palisades Medical Center and the interview at Christ Hospital, and whether the Division caseworker was acting at the direction of the Prosecutor's Office. Such a remand is not necessary given our conclusion that in any event, defendant's admissions to the Division caseworker would not be subject to exclusion from the Title Nine fact-finding hearing on the basis of the manner in which the interviews were conducted.

V.

In sum, in the absence of precedential authority to support defendant's novel argument, we decline to extend the reach of the exclusionary rule to the fact-finding hearing that was conducted in this case. We therefore reject defendant's contention that the hearing court erred by admitting into evidence and relying on defendant's statements to Crespo. Together with M.D.C.'s statements and other competent evidence adduced at the hearing, defendant's admissions to Crespo support the trial court's conclusion that defendant abused or neglected her daughter by failing to exercise a minimum degree of care in protecting her from continuing sexual abuse by her stepfather. N.J.S.A. 9:6-8.21(c)(4)(b). The trial court's error in also relying on defendant's statements memorialized in Dr. Coco's report is harmless because those statements were

31

merely cumulative of the statements she gave to Crespo. The error in admitting Dr. D'Urso's hearsay testimony, in other words, did not lead to a result that the hearing court would not otherwise have reached. Neno, 167 N.J. at 587 (citing Hightower, 120 N.J. at 410); see also Hightower, 120 N.J. at 410 ("For a hearsay error to mandate reversal, '[t]he possibility [of an unjust verdict] must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" (alterations in original) (quoting State v. Bankston, 63 N.J. 263, 273 (1973))).

To the extent we have not already addressed them, any additional arguments defendant raises on appeal lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION