# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2168-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

S.J.,[1]

     Defendant,

and

R.J.,

     Defendant-Appellant.

_____

IN THE MATTER OF R.J., C.J.,
J.J., C.H., and K.J., minors.

_____

Submitted June 9, 2021 – Decided July 6, 2021

Before Judges Fuentes, Whipple and Firko.

---

[1] We use initials and a pseudonym to protect the identity of the child and parties and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(11).

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FN-13-0089-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Catherine Reid, Designated Counsel, and, Jennifer M. Kurtz, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Alicia Y. Bergman, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant R.J., the biological father of C.J., "Claire," his then twelve-year-old daughter, appeals from a May 6, 2019 Family Part order of judgment finding by a preponderance of the credible evidence that he sexually assaulted his daughter. R.J. also appeals from the December 16, 2019 Family Part order entered by another Family Part judge terminating the litigation. The Law Guardian also seeks reversal. Because we conclude there was sufficient credible evidence to corroborate Claire's initial account and support the judges' findings and determinations, we affirm.

## I.

We discern the following facts from the record. Over a series of text messages the evening of August 21, 2018, Claire revealed to her best friend that R.J. sexually assaulted her. Claire's text messages stated R.J. had touched "her on the breast, butt, and vaginal area." In turn, Claire's friend told her mother, who called the Keansburg police that evening at 8:21 p.m. and requested Claire's disclosures be investigated. Police officers from the Keansburg police department responded to Claire's home. After Claire exited the home, the officers obtained preliminary information from her and S.J., Claire's mother, while R.J. was sleeping. S.J. transported Claire and the four other minor children living in the home to police headquarters.

At police headquarters, Claire confirmed the allegations of sexual abuse to Detective Thomas Manzo, Jr. of the Monmouth County Prosecutor's Office Special Victims Bureau and Detective Thomas Sheehan of the Keansburg police department during a formal interview. Claire advised the detectives she did not want her mother present during the interview because it made her feel uncomfortable. Neither the pre-interview conversation nor formal statement were recorded. No medical examination was performed as no penetration was alleged, and no violence was reported.

A-2168-19

Detectives Manzo and Sheehan conducted a formal, transcribed interview of Claire shortly after midnight on August 22, 2018, between 12:18 a.m. and 2:12 a.m. In her account, Claire described what transpired the evening of August 21, 2018 as follows:

> I was on the bed in my mom's room laying down watching T.V. at around 6:23 p.m. and my dad came into the room and shut the door, he then came onto the bed. He laid on top of me and ask[ed] who's this? [W]ho's this? I said "it's me, it's me [Claire]." Then my mom called my dad on the phone like she usually does when she is leaving work. When she hung up my dad was looking on the TV for something to watch. He turned on a movie, he skipped forward to a part where two people were having sex, and he kept pausing and unpausing that scene. He kept rubbing me everywhere with his hands. He was touching me on my vagina and my boobs. He tried to take my bra off and my pants off too. I was trying to pretend to sleep, after a while he told me you can go to sleep. After that, he got up and went to the bathroom. A little while after he went to the bathroom my mother came home. When my mom came home I started to pace back and forth, I wanted to tell someone. I did not want to tell my mom because I didn't know how she was going to react. I decided to text my friend . . . and tell her that my dad was raping me, but not really. [My friend] was concerned and texting me. She told me that her mother called the police. A little bit later the police arrived at my house.

Screenshots of the text messages sent by Claire to her friend were shown to Detective Manzo. The detectives inquired, "Can you describe what your father put on the TV when the people were having sex?" Claire replied, "I believe it

4

was called 'Best of Sex.' I remember that the title had the word 'sex' in it. He skipped to a part where a guy and a girl were having sex and paused it."

Claire told the detectives that defendant touched her "both under and over my clothes with his hands and fingers. He touched me under my underwear, and tried to take my shorts all the way off." When asked whether this was the first time R.J. "touched you in a way like this," Claire answered "[n]o. It is not the first time. It has happened too many times, I don't know the exact count." When asked if R.J. had previously touched her in different ways, Claire stated "[w]hen I was about [nine] or [ten] years old he put his dick in my mouth. . . . He had his dick in my mouth for a couple of seconds. . . . That was the only time he put his dick in my mouth. He touched my boobs and vagina too many times to count."

Claire described her father's penis as "long" with "wrinkles on it" and said it "stood up" and was "smooth." She hesitated when asked whether there was "anything you would like to add to this statement," and suggested that R.J. may "have been doing it to my sister [J.J.] too." Claire revealed: "[J.J.] was wearing a pajama dress and when I went into the room after [R.J.] left, her dress was pulled up to her stomach," and "I saw them [J.J. and R.J.] under the covers together in my mom and dad's bed, [J.J.] turned around super quick and looked

5

afraid." In addition, Claire recalled an incident where R.J. was touching her in the basement and after hearing someone coming down the stairs, R.J. "pushed me off him and started playing on his phone like nothing happened."

Claire reviewed her five-page simultaneously transcribed statement, initialed each page, and signed at the end at 2:12 a.m., as verified by a written time stamp, certifying "the facts contained herein are true." In her own handwriting, replete with grammatical and spelling errors, Claire wrote, "He was toching his self with his Hand on his dick this happened one or twice." She also initialed her handwritten statement.

New Jersey Division of Child Protection and Permanency (Division) caseworkers Dayna Roselli and Sheree-Sanders-Jones responded to police headquarters on the night of the incident. The detectives advised the caseworkers that R.J. was going to be arrested and transported to Monmouth County Correctional Institute (MCCI). The caseworkers interviewed J.J., who denied any inappropriate contact by R.J., and the other three children, who also denied any inappropriate touching by R.J.

S.J. was also interviewed by one of the caseworkers and related that when she arrived home on the evening of the incident, Claire ran up the stairs and fell to the floor inconsolably crying. According to S.J., R.J. considers the children

6

to be "his world." He drinks often but S.J. claims R.J.'s drinking used to be much worse, and he is able to speak and ambulate. The other children also mentioned R.J.'s longstanding alcohol abuse issue.

After being transported to police headquarters, R.J. was criminally charged with second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(3); first-degree aggravated sexual assault, N.J.S.A. 2C:24-4(a); second-degree sexual assault, N.J.S.A. 2C:14-2(b); and third-degree obscenity, N.J.S.A. 2C:34-3(b). R.J. invoked his right to remain silent and was transported to MCCI.

The following day, August 22, 2018, another caseworker followed up at the family home. Claire advised she was "doing okay," and her mother "was very supportive." During the investigation, the caseworker observed a large empty bottle of Bacardi on the back deck of the house. S.J. advised the caseworker that R.J. purchased a "handle of Bacardi Gold with every paycheck." In addition, S.J. claimed R.J. is "a completely different person when he is drunk," and that "his drinking has always been a problem." A no victim contact order was entered as to Claire.

On August 29, 2018, two Division caseworkers, Alyssa Bloom and Laurie Ebert, interviewed R.J. at MCCI. R.J. stated he "blacks out when he drinks and

never remembers anything."  When first presented with his daughter's charges, R.J. pondered, "[d]id I force my wife to have sex?"  At his "bail hearing,"[2] R.J. claimed he was told he sexually assaulted Claire.  In response, R.J. advised the caseworker "[i]f she sa[id] I did, then I did.  She['s] a good girl and wouldn't lie."  R.J. also wanted Claire to get help and hoped he didn't "ruin her life."  He asked the caseworker "[d]id I rape [Claire]"?  R.J.'s interview was documented and moved into evidence at the fact-finding hearing over objection.

While R.J. was still incarcerated, Claire produced a letter recanting her allegations against R.J. and claimed the story was fabricated in order to persuade R.J. to stop drinking.  The letter read:

> Mommy I am so sorry I lied about all of it.  I did not mean to let it get this far.  All I wanted to do is for daddy to get some help that is it.  I hate seeing him drunk sometimes I don't want to be around him because I hate seeing him like this.  I lied because I wanted him to realize his problem with his drinking.  [D]addy will never hurt me.  None of this happened.  I am sorry that I could not say this stuff to your face I speak better on paper.
>
> [Claire].

---

[2]  The record refers to R.J.'s "bail hearing" but we suspect it was a pre-trial detention hearing based upon the timeline, pursuant to the New Jersey Criminal Justice Reform Act, N.J.S.A. 2A:162-15 to -26, which became effective January 1, 2017.  This distinction is not germane to our decision.

On October 10, 2018, the morning of the grand jury proceeding, Detective Manzo discussed the recantation letter with Claire. She maintained that her initial story was a lie concocted to prompt R.J. to seek help for his drinking problem. Consequently, the charges were dismissed, and R.J. was released from custody. S.J. acquiesced in allowing him to return home despite not receiving treatment or services. However, the Division implemented a safety protection plan restricting R.J. from the home and from having any unsupervised contact with the children.

On November 5, 2018, the Division filed an order to show cause and verified complaint under N.J.S.A. 9:6-8.21 and N.J.S.A. 30:4C-12 naming R.J. and S.J. as defendants and seeking care and supervision of Claire, her three siblings, and S.J.'s niece. The application was granted, and R.J. was ordered to comply with the recommendations of a substance abuse evaluation. His parenting time with Claire was suspended, and R.J. was granted supervised parenting time with the other children.

On December 12, 2018, Claire underwent an evaluation at Dorothy B. Hersh Child Protection Center (Hersh). R.J. refused to submit to a psychological risk assessment at Hersh. On December 21, 2018, the return date of the order to show cause, R.J., S.J., and the Law Guardian requested the Family Part judge

to vacate the restrictions on R.J., allow him to have contact with Claire, and return to the home. The judge denied the application. Subsequently, on February 13, 2019, the parties moved for reconsideration, and the judge conducted oral argument. R.J. contended he completed alcohol treatment successfully, had remained sober, and the children desired to have contact with him. The judge reserved decision on the motion, but noted that Claire only changed her statement "after she had returned to the home." The record does not indicate whether the judge ruled on the motion for reconsideration, and no order was entered as to its disposition.

During the two-day fact-finding hearing which began on February 25, 2018, Detective Manzo testified on behalf of the Division about Claire's informal interview and her subsequent transcribed statement on the night of the alleged incident. Detective Manzo, who completed the course "Forensic Interview Child First Finding Words," denied using leading questions during Claire's interview and was adamant he was simply reconfirming previous statements she made. The pre-interview of Claire was not documented according to Detective Manzo because it was consistent with the information elicited in her transcribed statement. At the conclusion of the hearing, the judge ordered a referral for therapeutic visitation between Claire and R.J.

A-2168-19

At the April 22, 2018 fact-finding hearing, the judge conducted an in-camera interview of Claire in his chambers in the presence of the Law Guardian, which was played in the courtroom. At this juncture, Claire was thirteen-and-one-half years old. After being administered an oath, Claire confirmed her original version of events from August 21, 2018, including texting her friend and speaking with the officers at her home and giving a statement at police headquarters. Claire testified she sent the text message "[b]ecause I didn't want [R.J.] drinking." However, Claire departed from her original allegations and testified she told the detectives "a made-up story" and lied about "everything." And, Claire maintained the recantation from her earlier letter was given to her mother in order to "teach [R.J.] not to drink because [she] didn't want him to drink anymore." The allegations came "from my head and school" according to Claire, but she noted that nobody else at school said they were molested by their fathers.

Following Claire's in-camera interview, caseworker Bloom testified about her conversation with R.J. at MCCI. Bloom testified that R.J. indicated he drinks to "black out" and never "just drinks to have a drink." The caseworker also related that R.J. wanted Claire to get "help" if she needs to. R.J. did not testify at the fact-finding hearing. After documents were moved into evidence,

A-2168-19

the judge ordered therapeutic visitation to commence as soon as R.J. reached the top of the waitlist and reserved decision on the matter.

In his May 6, 2019 oral decision and conforming order, the judge found Claire's initial statement to law enforcement credible, her recantation incredible, and R.J.'s statements to the caseworkers at MCCI corroborative of Claire's initial statements. After considering the evidence, the judge based his findings on the initial statement Claire made to the detectives, her reference to the Best of Sex movie, and the corroborating statements R.J. made to the caseworkers. The judge noted that Claire's initial statement made no mention of R.J.'s drinking and determined it was "highly unlikely" Claire would have contacted a third party if only R.J.'s drinking was at issue. Further, the judge stressed Claire's allegation that R.J. was also assaulting J.J., her younger sister, would not have surfaced if the whole incident was simply an attempt to force R.J. to seek help for his drinking.

In his opinion, the judge addressed Detective Manzo's testimony about the Best of Sex movie. The judge emphasized:

> More specifically, [Claire] did indicate that there was—she was in her bedroom, her father came in, turned on the television, and played a specific movie that she identified or tried to identify with sexual content and reviewed and repeated that section of interest to him while he was lying on the bed with her.

12

The judge also highlighted Claire's difficulty with grammar and spelling, as evidenced in her transcribed and handwritten statement. Conversely, the judge pointed out that Claire's recantation letter was composed in an "orderly fashion" with little signs of grammatical or spelling difficulties. Further, the judge found R.J.'s statements made to the caseworkers at MCCI met the standards of corroboration for Claire's allegations of sexual abuse. The judge concluded the Division had proven, by a preponderance of the evidence, that R.J. had sexually abused Claire under N.J.S.A. 9:6-8.21(c).

On July 15, 2019, the judge conducted a compliance hearing. At the hearing, the judge lifted R.J.'s supervised visits with the four other children and ordered R.J.'s visits with Claire to continue in a therapeutic setting, pending the psycho-sexual assessment and recommendation from Hersh.[3] On September 16, 2019, the judge ordered R.J. could return to the home and that he was to continue to undergo therapeutic services with Claire.

On December 16, 2019, the parties appeared before another judge, who entered an order dismissing the litigation, as R.J. and Claire were discharged from their respective therapies. This appeal followed.

---

[3] The Law Guardian's brief incorrectly asserts that the judge lifted the supervisory requirement for visits between R.J. and Claire at the July 15, 2019 hearing.

On appeal, R.J. seeks reversal of the May 6, 2019 judgment of sexual abuse and removal of his name from the Central Registry of Child Abuse. R.J. also seeks reversal of the December 16, 2019 order dismissing the litigation.

II.

Our review of a trial court's finding of abuse or neglect is guided by well-established principles. "[W]e accord substantial deference and defer to the factual findings of the Family Part if they are sustained by 'adequate, substantial, and credible evidence' in the record." N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 521 (App. Div. 2017) (quoting N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014)). "Indeed, we recognize that '[b]ecause of the family courts' special jurisdiction and expertise in family matters, [we] should accord deference to family court factfinding.'" N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (first alteration in original) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).

However, "if the trial court's conclusions are 'clearly mistaken or wide of the mark[,]' an appellate court must intervene to ensure the fairness of the proceeding." N.J. Div. of Youth & Fam. Servs. v. L.L, 201 N.J. 210, 227 (2010) (alteration in original) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). We owe no deference to the trial court's legal conclusions,

which we review de novo.  N.J. Div. of Youth & Fam. Servs. v. A.B., 231 N.J. 354, 369 (2017).

"The Division bears the burden of proof at a fact-finding hearing and must prove . . . harm . . . by a preponderance of the evidence." N.J. Dep't. of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 22 (2013).  The Division must sustain that burden through the admission of "competent, material and relevant evidence."  N.J.S.A. 9:6-8.46(b); N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 32 (2011).  In making a determination of abuse and neglect, the trial court should base its decision on the totality of the circumstances.  N.J. Div. of Youth & Fam. Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011).

Here, the Division's evidence concerning Claire's alleged sexual abuse consists of her testimony regarding the text messages Claire sent to her friend, Claire's statements to the detectives, the Best of Sex movie, her recantation letter, in-camera interview, R.J.'s statement to the caseworkers, and the investigation and testimony of the detectives.  The judge relied upon these statements, evidence, and Claire's behavior as the basis for his abuse finding. R.J. argues, however, that the judge "misapplied" N.J.S.A. 9:6-8.46(a)(4) by relying upon Claire's out-of-court statement to support his abuse finding "on a

15

record devoid of independently admissible evidence legally sufficient to corroborate same" and wrongfully "rejected the child's recantation of her hearsay allegations." We disagree.

"In matters involving the alleged abuse and neglect of children, the New Jersey Rules of Evidence are supplemented by statute and court rule." N.J. Div. of Youth & Fam. Servs. v. L.A., 357 N.J. Super. 155, 166 (App. Div. 2003). N.J.S.A. 9:6-8.46(a)(4) provides when the Division alleges abuse and neglect of a child, "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect." We review de novo a trial court's determination whether a child's hearsay statement has been sufficiently corroborated under N.J.S.A. 9:6-8.46(a)(4). See N.J. Div. of Child Prot. & Permanency v. A.D., 455 N.J. Super. 144, 157 (App. Div. 2018).

To establish corroboration of a child's statement under N.J.S.A. 9:6-8.46(a)(4), "[s]ome direct or circumstantial evidence beyond the child's statement itself is required." N.B., 452 N.J. Super. at 522. Corroboration can be established by varied means. N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 436 (App. Div. 2002). "The most effective types of

corroborative evidence may be eyewitness testimony, a confession, an admission or medical or scientific evidence." L.A., 357 N.J. Super. at 166. "However, corroborative evidence need not relate directly to the accused." Ibid. The "evidence 'need only provide support for the out-of-court statements.'" N.B., 452 N.J. Super. at 521 (quoting L.A., 357 N.J. Super. at 166).

Corroborative evidence that is sufficient to support a court's reliance on a child's statements for a finding of abuse or neglect may be circumstantial because there is often no direct physical or testimonial evidence to support a child's statements. See Z.P.R., 351 N.J. Super. at 436. For example, in Z.P.R., we determined that a child's age-inappropriate sexual behavior corroborated the child's statements about a parent's improper sexual conduct. Ibid. In contrast, in N.B., we found insufficient evidence of corroboration, in part because a psychologist's report stating the child suffered from post-traumatic stress disorder as a result of the alleged abuse or neglect constituted inadmissible hearsay under Rule 808. N.B., 452 N.J. Super. at 523-26.

Our review of the trial judge's determination that there was sufficient corroboration for Claire's statements to be admissible under N.J.S.A. 9:6-8.46(a)(4) is de novo. A.D., 455 N.J. Super. at 156 (quoting N.B., 452 N.J. Super. at 521). R.J. and the Law Guardian's claim ignores one critical fact—

Claire's unchallenged, detailed statements about the Best of Sex movie that R.J. played and stopped during a sex scene while he sexually assaulted her. In addition to direct evidence of R.J.'s sexual abuse of Claire based upon her text message to her friend and statements to law enforcement on the night of the incident, the Best of Sex movie account serves to corroborate Claire's statements that R.J. was "touching" her "vagina" and "boobs," "kept rubbing [her] everywhere with his hands," and tried to make her undress, while the sex scene in the movie was playing.

Based upon the substantial credible evidence in the record, we are convinced the trial judge correctly determined that Claire's statements to the detectives, R.J.'s statement to the caseworkers, and R.J.'s unchallenged playing of a sex scene from the Best of Sex movie, provided sufficient corroboration of each other to support the judge's finding of abuse under N.J.S.A. 9:6-8.21(c). The record supports the judge's determination.

We are mindful that we "must protect against conflating a statement's reliability with corroboration," and N.J.S.A. 9:6-8.46(a)(4) requires "independent evidence of corroboration" to support a finding of abuse or neglect. N.B., 452 N.J. Super. at 522. We conclude Claire's text message and

initial statements to the detectives sufficiently reliable to be deemed admissible under N.J.S.A. 9:6-8.46(a)(4).

Moreover, under the circumstances presented, Claire's description of R.J.'s actions while playing the graphic Best of Sex movie scenes depicting sexual activity, and R.J.'s statements to the caseworkers at MCCI, provide independent, direct, and admissible evidence supporting the allegations of abuse and neglect. See N.B., 452 N.J. Super. at 522 (requiring direct or circumstantial evidence supporting the child's out-of-court statement for corroboration under N.J.S.A. 9:6-8.46 (a)(4)); L.A., 357 N.J. Super. at 166 (finding corroboration under N.J.S.A. 9:6-8.46(a)(4) requires only evidence supporting a child's out-of-court statements).

We are not persuaded by R.J. and the Law Guardian's contention there was no independent admissible evidence to corroborate Claire's original disclosure because the Best of Sex movie belies that contention. Finally, we reject R.J. and the Law Guardian's assertion that the trial judge erred by rejecting Claire's recantation letter and testimony.

Viewing the evidence through the prism of factors we established in N.B., it is clear the trial judge correctly concluded R.J. sexually abused Claire. We also conclude the litigation was properly dismissed.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2168-19