# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3308-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

N.H.,

     Defendant,

and

D.H.,

     Defendant-Appellant.

_____

IN THE MATTER OF C.H.,
K.H., and J.H., minors.

_____

Argued October 14, 2021 – Decided November 9, 2021

Before Judges Hoffman, Whipple, and Geiger.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FN-03-0080-19.

Eric R. Foley argued the cause for appellant (Afonso Archie & Foley, PC, attorneys; Eric R. Foley, on the brief).

Julia B. Colonna, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Julie B. Colonna, on the brief).

Noel C. Devlin, Assistant Deputy Public Defender, argued the cause for minors (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Noel C. Devlin, of counsel and on the brief).

PER CURIAM

Defendant D.H.[1] appeals from a Family Part's May 30, 2019 order finding that he abused and neglected J.H. (Jennifer) within the meaning of N.J.S.A. 9:6-8.21, and a February 24, 2020 order terminating the litigation. We affirm.

We glean the following facts from the record. D.H. (Derek) and N.H. (Nora) are the biological parents of three children: C.H. (Carter), born August 9, 2003, K.H. (Kayla), born February 11, 2007, and J.H. (Jennifer), born June 4,

---

[1] We use pseudonyms for ease of reference and initials to protect the identity of the parties and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(10), (12).

2

A-3308-19

2012. Derek and Nora divorced in 2017 and continued a custody battle throughout the New Jersey Division of Child Protection and Permanency Division's (Division) involvement.

Judge Aimee R. Belgard conducted a four-day fact-finding hearing in April and May 2019, at which the Division presented the testimony of Division case worker Tami Sidweber, Division intake worker Jennifer Alleman, R.T. (Rena), a third-party visitation supervisor, Dr. Laura Brennan, and Dr. Meryl Udell. Derek and Nora did not testify at the hearing. Derek presented testimony from Division permanency worker Chinoso Akunne. Nora did not present any witnesses.

The judge issued a May 30, 2019 order and comprehensive oral decision determining that the Division proved by a preponderance of the evidence that Derek sexually abused and neglected Jennifer. Based on the evidence presented, Judge Belgard made the following factual findings and credibility determinations.

The judge found Sidweber, an experienced case worker, to be credible, noting "[s]he was able to answer all the questions asked with ease" and provided "straightforward," "intelligent answers, even on cross-examination." Sidweber's notes, which were admitted into evidence, "confirm[ed] her testimony."

The Division received a referral from Carter's therapist on August 1, 2018, regarding alleged physical abuse of Carter. Less than two weeks later, the Division received a referral alleging that Derek sexually abused Jennifer in the shower. When Sidweber interviewed Jennifer on August 15, 2018, she denied anything inappropriate happened. When asked if Derek helps her great ready for a shower, Jennifer responded, "I am six and I do it myself." She stated that the bathroom door was locked, she washed herself alone, and no one came in to check on her. Jennifer reported that no one sees her naked.

During a second interview with Nora present, Jennifer reported that she showered with Derek, who was wearing underwear at the time, and that he placed her hand on his penis. Later during the same interview, Jennifer retracted the statement and said she did not even take a shower.

A third interview by a member of the Prosecutor's Office was terminated because Jennifer did not want to speak with a male interviewer. Jennifer kept stating that no one touched her, began to cry, and asked for her mother.

On August 16, 2018, the Division received a call from Kayla, who reported that Derek molested her when she was seven years old. The previous day, Kayla told Sidweber that Derek had never touched her inappropriately. When interviewed by Sidweber on August 17, Kayla stated that when she was

4

seven years old, Derek put her hand on his penis while they were in bed together during a trip to Vermont. Kayla also reported that the same thing happened on another occasion. She stated that in both instances, Derek had no pants on.

Kayla told Sidweber that after hearing what happened to Jennifer, she had the courage to disclose what happened to her. She stated she did not previously report Derek's conduct because she was afraid that he would go to jail.

Sidweber interviewed Derek on September 25, 2018. Derek admitted that during the incident with Jennifer, he was in the bathroom with her while wearing only his boxer shorts. He used a poof to wash Jennifer. After initially stating he was not in the shower with Jennifer, he later stated he was unsure about this. Derek stated that while it was normal to stop showering with kids at age three, he still showered with Jennifer because she was the baby, but he denied touching her. Derek confirmed that his boxer shorts had a hole in the front, but denied his penis came out. He denied Kayla's allegations.

Dr. Brennan, a pediatrician, evaluated Jennifer and Kayla in August 2018. Jennifer told him that she sometimes showers with Derek, who made her touch and rub him in front while he was wearing underwear with a hole in the front. She stated Derek had touched the top of her privates but never did so when she was not in the shower. She expressed worry about him touching her private

A-3308-19

parts. Dr. Brennan found these statements significant. She recommended that Jennifer be seen by a qualified mental health provider for evidence-based, trauma-focused therapy for her history of sexual abuse and witnessing domestic violence.

Dr. Brennan's report indicated that the custody battle between Derek and Nora and/or the multiple allegations made it difficult to interpret the alleged events. She nevertheless found it significant that Kayla described two incidents with Derek when she was seven, during which Derek placed her hand on his genitals. She recommended similar therapy for Kayla.

The judge found intake worker Alleman's testimony credible, noting she provided straightforward answers without hesitation, even when the answer may not have been helpful to the Division, and that her testimony was consistent with her investigative summary. Alleman became involved with the family following a December 2018 referral of inappropriate contact between Derek and Jennifer.

Alleman interviewed Jennifer at school on December 4, 2018. Jennifer relayed that during a trip to New York City with Derek, Kayla, and visitation supervisor Rena, she shared a hotel bed with Derek, but did not report that anything inappropriate happened. On December 7, 2018, Alleman interviewed

A-3308-19

Jennifer alone in her room. Jennifer told her that when Derek got back in bed during the trip, she felt his naked legs and later said he touched her.

When Jennifer was subsequently interviewed by the Prosecutor's Office with Alleman present on December 13, 2018, Jennifer drew a picture of what had occurred and explained that Derek's hand was on the inside and outside of her "cha-cha," meaning her vaginal area. Kayla was also interviewed and again reported that one of the hotel beds was for Jennifer and Derek.

Derek hired Rena as a visitation supervisor. The judge found Rena's testimony credible, noting her "straightforward candor, even on cross-examination" and that she "provided detailed testimony with good recollect." Although Rena now works as a babysitter for Nora, the judge "[did] not find this weighed against her credibility."

The judge rejected Derek's contention that Rena's testimony should be discounted because her perspective had changed, thereby skewing her observations. The judge explained: "Rather, the testimony of [Rena] establish[ed] that after learning of why supervision was required, she became vigilant and was careful in her observations, given the underlying concerns. There was no indication [in] her detailed testimony that her observations were in any way skewed."

A-3308-19

Rena testified that during the third weekend visit that she supervised, she learned why Derek needed to be supervised. As she was assisting Jennifer in the bath, Jennifer told her that her dad could not see her naked because he had made her touch his private parts in the shower.

The next day, Rena accompanied Derek and the girls on a trip to New York City to see the Rockettes. That night at the hotel, Rena slept with Kayla in one bed and Derek slept with Jennifer in the other bed. Rena recalled that Derek got out of bed to use the bathroom in the middle of the night, but she did not know if he was wearing pants. The next morning, while Derek was still sleeping, Jennifer whispered in Rena's ear that during the night, Derek pulled off his pants and boxers under the covers. Later that day, Rena saw Derek lying in bed with Jennifer with his hand over Jennifer's breast, groping her with his thumb and rubbing her chest.

Dr. Udell, a clinical psychologist utilized by the Division, performed evaluations of the children, but the evaluations did not pertain to determining what had happened. Instead, her role was to assess the children and determine the proper treatment for them. The judge noted that significant documentation contained in the Division's file was not provided to Dr. Udell. In particular, Dr. Udell had not seen the reports stemming from the August 2017 and May 2018

8

investigations that may have altered her understanding of the children's credibility and her opinions. The judge found Dr. Udell's testimony to be truthful, but she questioned the reliability of Dr. Udell's opinions and gave them very little weight.

Judge Belgard found that Jennifer's statements of taking a shower with Derek, "specifically her second statement to Miss Sidweber and her statement to Dr. Brennan," were admissible because they were "corroborated by [Derek's] own statement during his September 25 interview, that he did, in fact, assist [Jennifer] in the shower in the bathroom, using a poof to wash . . . her, while wearing only boxer shorts, which had a hole in the front."

The judge then provided a detailed recounting of Jennifer's other statements, noting their consistency with Derek's admissions and explaining why her inconsistent statements could be ruled out because of Derek's admissions. The judge rejected Derek's contention that Jennifer's statements regarding the shower incident were tainted by outside influence. "To the contrary, but for Dad's denial of inappropriate touching, his recitation of where, how, and even what he was wearing during the shower with [Jennifer], otherwise aligns perfectly with the recitation of where and how the shower occurred."

The judge found Jennifer's statement was further corroborated by her "inappropriate sexualized knowledge," which "has been recognized as corroboration of a child's hearsay statement regarding abuse," citing N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 436 (App. Div. 2002).

The judge also found Jennifer's two statements "to be trustworthy, not only because [they were] sufficiently consistent, but because of the level of detail that a young child of only six would otherwise unlikely know or understand even if coached." The judge rejected Derek's argument that the interview process was flawed or tainted and recognized that what Jennifer "was being asked to reveal about her father was difficult and uncomfortable." She noted that Jennifer was not repeatedly asked leading questions—"information was offered by her of her own accord." The interviews ceased when Jennifer became uncomfortable.

The judge also found Jennifer's statement regarding the trip to New York City to be admissible, noting her second statement to Alleman and statement to the Prosecutor's Office were corroborated by Rena's direct observations of the sleeping arrangements and Derek's physically molesting Jennifer while they were supposedly napping the next day. The judge did not find there was sufficient corroboration of Kayla's statements to admit them into evidence.

The judge determined that the Division established by a preponderance of the evidence that Derek abused and neglected Jennifer under N.J.S.A. 9:6-8.21(c)(3) by acts of sexual abuse, and under N.J.S.A. 9:6-8.21(c)(4)(B) by the physical, mental, and emotional impairment caused by the harm he inflicted.

A different judge entered a February 24, 2020 order terminating the litigation, restricting Derek's contact with the children until further order of the court, and limiting Derek's contact with Jennifer to therapeutic visitation, which would take place only after Derek completed a psychological evaluation and engaged "in psychoeducation and therapy specifically related to sexual trauma and domestic violence and its impact on children . . . ." This appeal followed.

Derek raises the following points for our consideration:

> POINT I
>
> THE TRIAL COURT MISAPPLIED THE PREVAILING LEGAL STANDARDS WHERE IT INCORRECTLY DETERMINED THAT SUFFICIENT CORROBORATION EXISTED TO RELY UPON A CHILD'S HEARSAY STATEMENTS TO MAKE A FINDING OF ABUSE AND NEGLECT PURSUANT TO N.J.S.A. 9:6-8.21 WHERE SEVERAL INCONSISTENT HEARSAY STATEMENTS EXIST IN THE RECORD WHICH REQUIRES REVERSAL.
>
> A. August 2018 Investigation
>
> B. December 2018 Investigation

A-3308-19

POINT II

THE COURT ABUSED ITS DISCRETION WHEN IT WOULD NOT ALLOW FOR AN ADDITIONAL TRIAL DATE TO CALL ITS EXPERT WITNESS.

POINT III

PURSUANT TO N.J.S.A. 9:6-8.50(b), THE DEFENSE WAS ENTITLED TO PRESENT ADDITIONAL WITNESSES INCLUDING AN EXPERT WITNESS ONCE THE COURT GRANTED DCPP'S MOTION TO AMEND THE COMPLAINT TO CONFORM TO THE PROOFS AND THE COURT COMMITTED REVERSIBLE ERROR BY FAILING TO PERMIT THE DEFENSE TO DO SO.

POINT IV

THE TRIAL COURT MISAPPLIED THE LAW REGARDING THE RELIABILITY OF THE CHILDREN'S STATEMENTS WHICH INDEPENDENTLY OR CONCURRENTLY WITH THE ISSUES RAISED IN POINT I CAUSED REVERSIBLE ERROR.

"Abuse and neglect cases 'are fact-sensitive.'" N.J. Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 180 (2015) (quoting N.J. Div. of Youth & Fam. Servs. v. T.B., 207 N.J. 294, 309 (2011)). "The Division bears the burden of proof at a fact-finding hearing . . . ." N.J. Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 22 (2013) (citing N.J.S.A. 9:6-8.46(b)). To prevail in a Title Nine proceeding, DCPP must show by a preponderance of the "competent,

material and relevant evidence" that the parent or guardian abused or neglected the affected child. N.J.S.A. 9:6-8.46(b); accord N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 32 (2011) (quoting N.J.S.A. 9:6-8.46(b)). There must be "proof of actual harm or, in the absence of actual harm," through "competent evidence adequate to establish [the child was] presently in imminent danger of being impaired physically, mentally or emotionally." N.J. Div. of Youth & Fam. Servs. v. S.I., 437 N.J. Super. 142, 158 (App. Div. 2014) (citation omitted). In determining whether a child was abused and neglected, "the trial court must base its findings on the totality of the circumstances." N.J. Div. of Youth & Fam. Servs. v. V.T., 423 N.J. Super. 320, 329 (App. Div. 2011).

Our review of a trial court's finding of abuse or neglect is guided by well-established principles. "[W]e accord substantial deference and defer to the factual findings of the Family Part if they are sustained by 'adequate, substantial, and credible evidence' in the record." N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 521 (App. Div. 2017) (quoting N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014)). We ordinarily accord such deference because of the Family Part's "special jurisdiction and expertise," N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)), and its "opportunity to make first-

hand credibility judgments about the witnesses . . . [and have] a 'feel of the case' that can never be realized by a review of the cold record," <u>N.J. Div. of Youth & Fam. Servs. v. E.P.</u>, 196 N.J. 88, 104 (2008) (quoting <u>N.J. Div. of Youth & Fam. Servs. v. M.M.</u>, 189 N.J. 261, 293 (2007)).

"Nevertheless, if the trial court's conclusions are 'clearly mistaken or wide of the mark[,]' an appellate court must intervene to ensure the fairness of the proceeding." <u>N.J. Div. of Youth & Fam. Servs. v. L.L.</u>, 201 N.J. 210, 226-27 (2010) (alteration in original) (quoting <u>E.P.</u>, 196 N.J. at 104). We owe no deference to the trial court's legal conclusions, which we review de novo. <u>N.J. Div. of Child Prot. & Permanency v. A.B.</u>, 231 N.J. 354, 369 (2017) (citation omitted).

Applying this limited scope of review, we affirm the finding of abuse and neglect, substantially for the sound reasons expressed in Judge Belgard's oral opinion. Our careful review of the record convinces us that the Division met its burden of proving abuse and neglect by the preponderance of the evidence. We add the following comments.

Title Nine's "primary concern is the protection of the children, not the culpability of parental conduct." <u>G.S. v. N.J. Div. of Youth & Fam. Servs.</u>, 157 N.J. 161, 177 (1999) (citing <u>State v. Demarest</u>, 252 N.J. Super. 323, 330 (App.

Div. 1991)); accord A.L., 213 N.J. at 18. "The focus in abuse and neglect matters . . . is on promptly protecting a child who has suffered harm or faces imminent danger." A.L., 213 N.J. at 18 (citing N.J.S.A. 9:6-8.21(c)(4)).

Derek argues that the trial court incorrectly determined that Jennifer's out-of-court statements were sufficiently corroborated to be admissible, constituting reversible error. We disagree.

"A Family Court's determination of whether the Division's proofs are admissible is 'left to the . . . court's discretion, and its decision is reviewed under an abuse of discretion standard.'" N.J. Div. of Child Prot. & Permanency v. A.D., 455 N.J. Super. 144, 156 (App. Div. 2018) (alteration in original) (quoting N.J. Div. of Youth & Fam. Servs. v. I.H.C., 415 N.J. Super. 551, 571 (App. Div. 2010)).

"[P]revious statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect." N.J.S.A. 9:6-8.46(a)(4). Accord P.W.R., 205 N.J. at 32-33. The statute "constitutes a statutorily created exception to the hearsay rule but independent evidence of corroboration is required in order to find abuse or neglect." N.B., 452 N.J. Super. at 522.

As we recently explained:

> "A child's statement need only be corroborated by '[s]ome direct or circumstantial evidence beyond the child's statement itself.'" <u>N.B.</u>, 452 N.J. Super. at 522. "The most effective types of corroborative evidence may be eyewitness testimony, a confession, an admission or medical or scientific evidence." <u>N.J. Div. of Youth & Fam. Servs. v. L.A.</u>, 357 N.J. Super. 155, 166 (App. Div. 2003). However, corroboration of child sexual abuse does not have to be "offender specific," because "[i]t would be a rare case where evidence could be produced that would directly corroborate the specific allegation of abuse between the child and the perpetrator . . . ." <u>Z.P.R.</u>, 351 N.J. Super. at 435. Rather, corroborative evidence "need only provide support" for the child's statements and may be circumstantial. <u>N.B.</u>, 452 N.J. Super. at 521. The evidence must be independently admissible for a court to deem it corroborative of a child's statement. <u>See</u> <u>id.</u> at 524-26 (finding evidence was insufficient to corroborate the child's statement because it constituted inadmissible hearsay).
>
> In <u>N.B.</u>, we cautioned that "courts must protect against conflating a statement's reliability with corroboration," <u>id.</u> at 522, and determined "consistency alone does not constitute corroboration," <u>id.</u> at 523. We further noted that "in assessing the trustworthiness of a child's hearsay statement under N.J.R.E. 803(c)(27) . . . a court may consider . . . 'consistency of repetition,'" but that determination is "distinct from corroboration of the statement". <u>Id.</u> at 523 n.4.
>
> [<u>A.D.</u>, 455 N.J. Super. at 1567.]

Judge Belgard's finding that Jennifer's out-of-court statements were sufficiently corroborated and admissible is amply supported by competent evidence in the record. We discern no abuse of discretion or legal error. The changes in Jennifer's statements go to their probative weight, not their admissibility. Therefore, Jennifer's statements regarding Derek's inappropriate conduct were properly considered as part of the totality of the circumstances when determining if Derek abused and neglected her.

We next address Derek's arguments that the trial court abused its discretion when it declined to grant an additional trial day to allow him to produce additional witnesses, including an expert witness, after the court granted the Division's application to amend the complaint to conform to the evidence. We are unpersuaded by this argument.

The expert that Derek sought to utilize would have extended the trial until the following month due to his unavailability. Derek did not otherwise object to amending the complaint to conform to the evidence. He did not identify any other witnesses he intended to produce or provide a proffer of their expected testimony.

"Trial judges are given wide discretion in exercising control over their courtrooms." N.J. Div. of Youth & Fam. Servs. v. J.Y., 352 N.J. Super. 245,

17

264 (App. Div. 2002) (citations omitted). Thus, "we review a trial court's denial of a request for an adjournment 'under an abuse of discretion standard.'" Escobar-Barrera v. Kissin, 464 N.J. Super. 224, 233 (App. Div. 2020) (quoting State ex rel. Comm'r of Transp. v. Shalom Money St., LLC, 432 N.J. Super. 1, 7 (App. Div. 2013)). As we explained in Escobar-Barrera:

> Whether there was an abuse of discretion depends on the amount of prejudice suffered by the aggrieved party. State v. Smith, 66 N.J. Super. 465, 468 (App. Div. 1961). Thus, refusal to grant an adjournment will not lead to reversal "unless an injustice has been done." Nadel v. Bergamo, 160 N.J. Super. 213, 218 (App. Div. 1978).
>
> [Ibid.]

Here, Derek's counsel was on notice that the Division would be obtaining an expert witness from the filing of the complaint in October 2018. The trial did not commence until April 17, 2019. Derek waited to retain an expert until after the Division had presented its case. This delay, not excusable neglect, resulted in his adjournment request.

Notably, Judge Belgard offered a trial day nearly one month after the hearing began for Derek to present his expert's testimony. She also offered to allow the expert to testify by way of de bene esse deposition. Derek did not take advantage of either opportunity.

In addition, Derek has not demonstrated that he was prejudiced by the inability to call a psychologist as an expert witness. Dr. Brennan testified that Jennifer had no physical abnormalities and that she repeated her allegations against Derek. Dr. Udell performed a psychological evaluation of Jennifer. Her focus was on the services relevant to the dispositional hearing. She did not testify about Jennifer's allegations against Derek. Judge Belgard gave Dr. Udell's testimony "very little weight."

Moreover, the finding of abuse and neglect hinged on the testimony recounting the facts and corroboration of Jennifer's allegations. Rena witnessed Derek inappropriately touching Jennifer and Derek made admissions that provided the necessary corroboration for Jennifer's statements. Derek did not proffer that his proposed expert or any other proposed witnesses would counter any of the Division's factual witnesses.

Under these circumstances, Derek was not prejudiced and did not suffer an injustice. Therefore, the adjournment denial was not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3308-19