# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2238-23

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

      Plaintiff-Respondent,

v.

M.P., [1]

      Defendant-Respondent,

and

A.D.,

      Defendant-Appellant.

_____

IN THE MATTER OF M.D.,
a minor.

_____

Submitted March 12, 2025 – Decided March 25, 2025

---

[1]  We use initials and pseudonyms to protect the confidentiality of these proceedings. R. 1:38-3(d)(12).

Before Judges Mayer and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FN-18-0128-22.

Williams Law Group, LLC, attorneys for appellant (Alvin Eugene Richards, III, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Division of Child Protection and Permanency (Sookie Bae-Park, Assistant Attorney General, of counsel; Lakshmi Barot, Deputy Attorney General, on the brief).

Cipriano Law Offices, PC, attorneys for respondent M.P., join in the briefs of respondent New Jersey Division of Child Protection and Permanency, and minor M.D.

Jennifer N. Sellitti, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant A.D. appeals from a November 15, 2022 order entered by Judge Bernadette DeCastro, finding he sexually abused his biological daughter M.D. (Mia), born in December 2015, and requiring inclusion of his name on the Child Abuse Registry. Additionally, defendant appeals from Judge DeCastro's February 13, 2024 order terminating the litigation filed by plaintiff Division of

Child Protection and Permanency (Division).  We affirm for the cogent reasons expressed by Judge DeCastro.

We presume the parties are familiar with the facts.  To give context to our decision, we summarize the facts based on the evidence adduced at trial.

Defendant and M.P. (Mother) married in 2015 and divorced in 2018.  After the divorce, defendant and Mother shared legal custody of Mia.  Mother had primary residential custody.  Defendant had parenting time on alternate weekends and one night during the week.

In December 2021, the Division received a referral alleging defendant and Mother were involved in a domestic violence incident.  Mia witnessed the incident.

A Division caseworker interviewed Mia after the incident.  During the interview, Mia, unprompted, told the caseworker "she d[id]n't like it when [defendant] lick[s] her toes and her arms."  Mia also disclosed to the caseworker that she slept in defendant's bed with defendant when she visited him.

Subsequently, the Division learned Mia recounted other disturbing interactions with defendant.  The disclosures included defendant licking Mia from her toes to her belly button.  Mia also reported defendant would place his

3

hand on her chest underneath her clothing and kiss her with an open mouth. Mia asked defendant to stop but he did not.

In February 2022, the Division was granted care and custody of Mia. Around the same time, Mia started seeing a therapist through the Child Protection Center (CPC).

In May 2022, the Division received a referral from Mia's therapist. Mia told the therapist that defendant touched her all over "including her vaginal area." Later that day, the Division interviewed Mia, who reported defendant would place himself on top of her and his "private area would push into her private area." According to the therapist, Mia "made slapping noises with her hands to indicate . . . what it sounded like when [defendant] was bouncing on top of her."

Later that month, Mia's law guardian also told the Division Mia reported "her father would jump on her" and "his private area would touch her private area." Based on this report, defendant's parenting time was suspended pending CPC's evaluation of Mia. Defendant's parenting time remained suspended throughout the litigation.

Dr. Gladibel Medina conducted a psychosocial sexual abuse evaluation of Mia. Mia described various sexual acts performed by defendant, including those

she previously reported to the Division. A physical examination of Mia revealed no visible injuries or inner-genital trauma. However, Dr. Medina diagnosed Mia with suspected child abuse and recommended a second psycho social evaluation and sexually specific trauma-focused therapy.

Dr. Carla Cooke conducted the second psychosocial evaluation of Mia in July 2022. During the evaluation, Mia reported defendant licked her legs and "jump[ed] on her and . . . bounce[d] on her really fast, and she . . . hit her head on the headboard." Using dolls provided by Dr. Cooke, Mia demonstrated defendant moving on top of her and simulating quick bouncing action. Mia also told Dr. Cooke defendant instructed her not to say anything to Mother. Based on this evaluation, Dr. Cooke diagnosed Mia with suspected sexual trauma.

At defense counsel's suggestion, defendant underwent a twelve-and-one-half-hour forensic psychological evaluation with Dr. Elizabeth Stillwell. Dr. Stillwell concluded defendant demonstrated no risk factors for sexual violence other than the allegations reported by Mia.

In a September 9, 2022 report, the Division concluded the allegations of sexual abuse-sexual molestation and sexual penetration against defendant were substantiated "due to the consistent disclosures made by [Mia] to various professionals in regard[] to sexual abuse by [defendant]."

A-2238-23

Over the course of three separate dates in the fall of 2022, Judge DeCastro heard testimony on behalf of the Division from Drs. Cooke and Medina, the Division's intake worker assigned to Mia's case, and the Division's supervisor assigned to Mia's case. Dr. Stillwell testified for defendant.

Dr. Cooke testified Mia did not understand the nature of the activities with defendant as sexual. Rather, Mia expressed the activities were something she disliked and wanted to stop. Dr. Cooke further explained it did not appear Mia was coached because "her presentation did not identify coaching to be a concern" and "nothing . . . gave [her] pause or concern to think that [Mia] had made this up." She further opined Mia's disclosures were generally consistent with the earlier disclosures Mia made to her therapist and Division caseworkers. Dr. Cooke explained any seemingly inconsistent disclosures by Mia could be attributed to the fact that there were multiple occurrences, which might not be distinct in a child's mind. Further, Dr. Cooke testified Mia's "increase[d] . . . factual disclosures" regarding the abuse could have been a result of her therapy sessions, the questions asked during the various evaluations, or the available information Mia had at the time.

Dr. Cooke explained a diagnosis of confirmed child sexual abuse required evidence such as perpetrator confirmation, DNA evidence, or video footage.

A-2238-23

While there was no such evidence in Mia's case, Dr. Cooke considered Mia's psychological evaluations, Mia's statements, Dr. Medina's evaluation of Mia, and information from Mia's therapy sessions. Based on this evidence, Dr. Cooke suspected defendant inflicted sexual trauma on Mia.

Dr. Medina, an expert in diagnosing abuse and neglect, testified the sexual nature of the activities reported by Mia were "acquired knowledge." According to Dr. Medina, acquired knowledge in a child of Mia's age "would come from an exposure" or "[s]eeing those actions or an experience." Dr. Medina further explained a medical diagnosis of "[s]uspected child sexual abuse means that the child has provided a disclosure consistent with an exposure or experience of sexual behaviors." Dr. Medina concurred with Dr. Cooke that Mia did not appear "coached."

Regarding the absence of any physical signs of abuse, Dr. Medina testified "suspicion of . . . sexual abuse was given as the diagnosis because of the sexually explicit details [Mia] described." Dr. Medina confirmed it was "normal that there were no physical findings" given the "details surrounding [Mia]'s disclosure." Dr. Medina further testified "most exams in . . . child sexual abuse are normal."

A-2238-23

Dr. Stillwell, an expert in clinical and forensic psychology, testified for defendant.  Based on her clinical interview and mental status examination of defendant, Dr. Stillwell testified "there was no data to support that he had any sexual deviant behavior" and "no evidence to support that [defendant] ha[d] a history of sexual offending outside of the[se] allegations."

Dr. Stillwell noted the number of times Mia was interviewed by various individuals was significant in assessing "the validity of the allegations." However, Dr. Stillwell could not form an opinion "regarding the validity of [Mia's] disclosures without having seen her."  Dr. Stillwell also mentioned the inconsistencies and contradictions in Mia's reporting of defendant's activities. Dr. Stillwell testified she could not "come to a conclusion as to whether or not [defendant] engaged in the behavior" because it was "outside the scope of [her] evaluation to determine whether or not the[] allegations [were] true or . . . valid."

After hearing the testimony and reviewing the evidence, Judge DeCastro found "by a preponderance of the credible evidence that [defendant] sexually abused [Mia] and placed her at substantial risk of harm."  In her eight-page written decision, the judge recited the hearing testimony and found "the child's disclosures combined with the Division's witnesses including its experts were both credible and persuasive to support the substantiation."  Judge DeCastro

wrote, "as testified to b[y] Drs. Cooke and Medina[,] the details provided by [Mia] as to when the abuse occurred, where it occurred, how it made her feel, the sounds that were being made by clapping all corroborate [Mia]'s disclosures of sexual abuse." The judge, citing extensively to the testimony of Drs. Cooke and Medina, further explained the "argument that the child may have been coached ha[d] no merit given the expert testimony that the child's disclosures are based upon experiences that she had and not were acquired from something she saw or heard."

Judge DeCastro considered but ultimately found "Dr. Stillwell's report wholly immaterial to the issue at hand and thus not persuasive." The judge explained Dr. Stillwell "did not evaluate [Mia]" and was tasked with "determin[ing] whether there was a risk of recidivism" rather than "assess[ing] the veracity of the child's disclosures or whether [defendant] committed those acts of sexual abuse."

In her February 13, 2024 order, Judge DeCastro terminated the litigation. The judge also ordered defendant have no contact with Mia "until [Mia]'s therapist recommend[ed] that contact resume."

On appeal, defendant argues Judge DeCastro erred in finding he sexually abused Mia. He also contends the judge's findings were not supported by a

preponderance of the competent evidence in the record, focusing his argument on Mia's inconsistent disclosures during the Division's investigation. Further, defendant asserts there was no corroborating evidence supporting the judge's findings because the Division's experts were unable to confirm any sexual abuse.

We reject defendant's arguments and affirm substantially for the reasons stated in Judge DeCastro's thorough and well-reasoned factual findings, credibility determinations, and legal conclusions. We add only the following comments.

Our scope of review is limited. We defer to the factual findings of the Family Part if they are sustained by "adequate, substantial, and credible evidence" in the record. N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 521 (App. Div. 2017) (quoting N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014)). We accord deference based on the Family Part's "special jurisdiction and expertise in family matters." N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 392, 413 (1998)). We specifically defer to the trial judge's credibility determinations, and will overturn those determinations and factual findings only when the "findings went so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279

(2007). However, we review a trial judge's interpretation of the law de novo. N.J. Div. of Child Prot. & Permanency v. B.P., 257 N.J. 361, 374 (2024) (citing N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 369 (2017)).

Title Nine, N.J.S.A. 9:6-1 to 9:6-8.114, governs child abuse and neglect actions. N.J.S.A. 9:6-8.21(c)(3) defines an "abused or neglected child" as "a child less than 18 years of age whose parent or guardian . . . commits or allows to be committed an act of sexual abuse against the child." A finding of substantiated sexual abuse must be based on a "preponderance of the evidence." N.J.S.A. 9:6-8.46(b). Under N.J.A.C. 3A:10-7.4(a)(2), a finding of substantiated abuse includes "[s]ubjecting a child to sexual activity or exposure to inappropriate sexual activity or materials."

Defendant contends there was no corroborating evidence supporting Mia's reported sexual abuse. We review de novo a judge's determination concerning corroborating evidence under N.J.S.A. 9:6-8.46(a)(4). N.J. Div. of Child Prot. & Permanency v. A.D., 455 N.J. Super. 144, 156 (App. Div. 2018) (reasoning such a finding "essentially involve[s] the application of legal principles and d[oes] not turn upon contested issues of witness credibility"). Under N.J.S.A. 9:6-8.46(a)(4), "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided,

11

A-2238-23

however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect."

"The most effective types of corroborative evidence may be eyewitness testimony, a confession, an admission or medical or scientific evidence." N.J. Div. of Youth & Fam. Servs. v. L.A., 357 N.J. Super. 155, 166 (App. Div. 2003). However, corroborating evidence need not independently prove the abuse or neglect occurred. A.D., 455 N.J. Super. at 161. New Jersey courts have found:

> In most cases of child sexual abuse . . . there is no direct physical or testimonial evidence. The child victim is often the only eyewitness to the crime, and physical corroboration is rare because the sex offenses committed against children tend to be nonviolent offenses such as petting, exhibitionism, fondling and oral copulation. Physical corroboration may also be unavailable because most children do not resist, either out of ignorance or out of respect for authority. Consequently, in order to give any real effect to the child victim hearsay statute, the corroboration requirement must reasonably be held to include indirect evidence of abuse.
>
> [N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 436 (App. Div. 2002) (quoting State v. Swan, 790 P.2d 610, 615-16 (Wash. 1990)).]

The corroboration requirement may be satisfied by indirect evidence, such as "a child victim's precocious knowledge of sexual activity, a semen stain on a child's blanket, a child's nightmares and psychological evidence." N.J. Div. of

12

Child Prot. & Permanency v. I.B., 441 N.J. Super. 585, 591 (App. Div. 2015) (quoting Z.P.R., 351 N.J. Super. at 436). In Z.P.R., we found "no doubt that evidence of age-inappropriate sexual behavior could provide the necessary corroboration required by N.J.S.A. 9:6-8.46(a)(4)." 351 N.J. Super. at 436. Similarly, a child's "knowledge of sexual practices beyond her reasonably anticipated imagination" may corroborate the child's reported sexual abuse. Ibid. (quoting State v. D.R., 214 N.J. Super. 278, 298 (App. Div. 1986)).

Here, Judge DeCastro found there was sufficient corroborating evidence in the form of the Division's expert testimony through Drs. Cooke and Medina. The doctors evaluated Mia and diagnosed her with suspected sexual abuse based on Mia's specific and consistent description of defendant's activities, Mia's feelings concerning defendant's conduct, and Mia's repeated requests that defendant stop the activities.

Contrary to defendant's argument, the law does not require a diagnosis of confirmed sexual abuse for corroboration. Our courts have expressly held "[c]orroborative evidence 'need only provide support' for the child's statements and may be circumstantial." A.D., 455 N.J. Super. at 157 (quoting N.B., 452 N.J. Super. at 522). Here, the Division's experts pointed to Mia's "knowledge from experience" and her ability to describe "circumstances . . . unusual for a

child [her age]," which sufficiently corroborated Mia's statements to support Judge DeCastro's finding that defendant sexually abused Mia.

Additionally, Judge DeCastro's written decision addressed defendant's renewed arguments on appeal regarding Mia's purported inconsistent statements and allegation that Mia's statements were the result of coaching. We reject defendant's arguments on these issues for the reasons articulated by Judge DeCastro.

Having reviewed the record, we are satisfied Judge DeCastro's factual findings that the Division substantiated the sexual abuse allegations against defendant are amply supported by the record and her legal conclusions are unassailable.

To the extent we have not addressed any of defendant's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

14